**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

DEAN TIMMERMAN, ANN
TIMMERMAN, and LARRY EIDE,
solely in his capacity as Chapter 7
Bankruptcy Trustee,

        Plaintiffs,

vs.

RONALD F. EICH, R. PATRICK
EICH, and EICH LAW FIRM, P.C.,

        Defendants.

No. C 09-3072-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

---

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
   *A. Standards For Summary Judgment* . . . . . . . . . . . . . . . . . . . . 12
   *B. The Trustee's Standing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
       *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 15
       *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   *C. Subject Matter Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . 19
       *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 19
       *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
   *D. Estoppel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
       *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 22
       *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
   *E. In Pari Delicto* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
       *1. Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . 32
       *2. Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

     *F. Insufficient Evidence Of Emotional Distress* . . . . . . . . . . . . . . . . . . 37
          *1.*     *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . 37
          *2.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
     *G. Breach Of Warranty* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
     *H. Punitive Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
          *1.*     *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . 40
          *2.*     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

I n this action, the plaintiff farmers assert that their bankruptcy attorneys were professionally negligent in their bankruptcy case and breached warranties about their qualifications to litigate bankruptcy matters. The bankruptcy attorneys have moved for summary judgment on various grounds, but the central one is that the farmers caused their injuries through their own fraudulent acts. Thus, in lay terms, the farmers call the bankruptcy attorneys stupid, and the bankruptcy attorneys call the farmers liars. Perhaps it is fortunate that the arguments have been framed in legal argot, not schoolyard vernacular.

## I. INTRODUCTION

### A. Factual Background

I will not attempt here an exhaustive dissertation on the undisputed and disputed facts in this case. Rather, I will set forth sufficient of the facts, both undisputed and disputed, to put in context the parties' arguments concerning the defendants' motion for

summary judgment. Unless expressly indicated otherwise, the parties agree that the facts stated are undisputed.[1]

Unless circumstances dictate otherwise, I will identify plaintiffs Dean and Ann Timmerman separately as Dean and Ann and plaintiff Larry Eide, the Chapter 7 bankruptcy case trustee, separately as "the Trustee," but all three plaintiffs collectively as "the Timmermans." I will identify defendants Ronald F. Eich, R. Patrick Eich, and the Eich Law Firm, P.C., collectively as "the Eichs."

Dean and Ann have been involved in farming since the early 1970s. By 2005, Dean and Ann farmed 4,000 to 5,000 acres, most of it leased land. American National Bank (ANB) financed their farming operation and had been their only bank for many years. In 2006, and for many year before that, United Ag Processors (UAP) supplied Dean and Ann with everything they needed for their crop inputs, including fertilizer, chemicals, and seed.

---

[1] I have not necessarily stated facts precisely as the parties have stated them in their respective statements of facts or responses to each other's statements of facts; instead, I have occasionally recast them to eliminate disputed language, to track more precisely the language of documents or deposition testimony, and for other editorial or organizational reasons. Nevertheless, I believe that I have accurately indicated what facts are undisputed and which are disputed and why.

My determination of what facts are disputed or undisputed has been complicated by the conduct of both sides in framing statements of facts and responding to them. For example, many of the plaintiff farmers' statements of additional facts are that certain persons "testified" to certain facts, and the defendant bankruptcy attorneys' responses were admissions that the persons so testified. The bankruptcy attorneys used the same form of response—admissions that a person testified a certain way—to some statements of additional facts by the farmers that *were not* cast in terms of what someone testified to, apparently relying on subheadings in the Statement Of Additional Facts in the form "TESTIMONY FROM [NAME]." Such statements and responses leave me with no idea whether or not the *facts* stated in the cited testimony are disputed.

Dean had an agreement with UAP to pay UAP for his fertilizer, chemicals, and seed for the 2005 crop year by January 12, 2006.

In January 2006, three days before Dean's payment was due to UAP, the manager of the UAP plant and one of the salesmen came to see Dean. At that time, Dean wrote a check to UAP for more than $400,000.00. ANB refused to honor the check, however, and returned it to UAP. The parties agree that, if Dean did not pay UAP, he would not have had an alternate supplier available for his 2006 crop, and he also needed money from ANB in order to pay his cash rents, which were due on March 1, 2006. Thus, in January 2006, Dean was already suffering what he described as "very high stress" from the financial pressures on his farming operation from UAP, ANB, and his landlords.

In mid-February of 2006, Dean received a call from Mr. Koster, his banker with ANB. Mr. Koster told Dean that he and Ann were going to have to declare bankruptcy, but that if they did, then ANB would advance them money for the next crop year. The parties agree that ANB wanted Dean and Ann to file a Chapter 7 bankruptcy. At some point, it is not clear from the parties' statements of facts whether it was in the same telephone call, Mr. Koster suggested that Dean talk to the bank's lawyer. Dean did talk to the bank's lawyer, who referred him to an attorney in Sioux City. Dean and his son met with that attorney and discussed what would be involved in filing a bankruptcy, but ultimately decided not to retain that attorney, because of the distance between the Timmerman residence and Sioux City. Instead, Dean sought a local attorney, presumably meaning one in the Sac County/Carroll County area.[2]

---

[2]Neither the Complaint (docket no. 1) nor the parties' statements of facts or responses indicate the county or counties in which the Timmermans resided or pursued farming operations. However, it appears from materials in the parties' appendices that the

(continued…)

On February 21, 2006, Dean met with defendant Ron Eich, an attorney with the Eich Law Firm in Carroll, Carroll County, Iowa, and the Eich Law Firm agreed to represent Dean and Ann in their bankruptcy proceedings. The parties agree that Dean never signed a fee agreement, and the Timmermans contend that the Eichs never informed Dean or Ann of what the Eichs' hourly rate would be. Dean brought the Eichs all of the farm account books, bank statements, receipts, lease papers, and financial paperwork in Dean and Ann's possession for the years 2005 and 2006. Dean and Ann assert that they relied on the Eichs to prepare the appropriate bankruptcy documents based on the information that they had provided. Dean asserts that the Eichs never asked him for any more information or about any transactions in the prior two years. He also asserts that he and Ann just turned everything over to the Eichs. Dean and Ann eventually signed the schedules and bankruptcy petition electronically, although Ann testified that she personally went to the Eichs' law office to sign the original petition and schedules, and that she was given the impression that all of the appropriate information was in them, based on what they had provided to the Eichs. Ann also contends that she was not given time to review the filings before signing them, but that she did review them afterwards. Dean did not review the filings before signing them.

On March 15, 2006, notwithstanding that ANB wanted Dean and Ann to file a Chapter 7 (liquidation) petition, the Eichs actually filed a voluntary Chapter 12 (family farm reorganization) petition for them in the United States Bankruptcy Court for the Northern District of Iowa. The Eichs maintain that Ann would not consent to the filing of a Chapter 7 petition. The Timmermans assert that, despite the requirement that

---

[2](...continued)
Timmermans lived in Auburn, Sac County, Iowa, north of Carroll and Carroll County, Iowa.

Chapter 12 debtors go through credit counseling prior to the filing of the petition, the Eichs did not mention that counseling to Dean or Ann until after the petition was filed. They also assert that, despite the Eichs signing under oath that they had informed Dean and Ann about the kinds of relief available under the various bankruptcy code chapters and their eligibility to file under each chapter, the Eichs never did so.

The Timmermans contend, and the Eichs admit, that during the same month that the Chapter 12 petition was filed, the Eichs told Dean and Ann to empty their bank accounts down to a minimal ($50) balance and to deposit the funds, instead, into the Eichs' trust account, and Dean and Ann did deposit $9,379 into the Eichs' trust account; that the Eichs did not inform Dean or Ann about what the Eichs would be doing with their money; that Dean and Ann did not authorize the Eichs to do anything with the money; that Dean and Ann also deposited in the Eichs' trust account $112,00 in proceeds from cashing in Dean's mother's life insurance policy, also on the advice of the Eichs; and that the Eich Law Firm took a $15,000 fee out of those deposits, but had not previously billed Dean or Ann for the pertinent work.

On February 2, 2007, the Eichs converted Dean and Ann's bankruptcy petition from a Chapter 12 petition to a Chapter 7 petition, because the Eichs had been unable to get a reorganization plan confirmed. The Timmermans contend that, although the Eichs did discuss the possibility of a conversion of the bankruptcy from Chapter 12 to Chapter 7, the Eichs filed the conversion pleading without authorization from the Timmermans. The Timmermans also contend that the Eichs did not discuss with them any other options, nor did they discuss the possible consequences of any other options.

At a meeting of creditors in the Chapter 12 proceeding on April 11, 2006, and again in a meeting of creditors in the Chapter 7 proceeding on March 19, 2007, Dean and Ann confirmed the accuracy of the schedules and statement of affairs in the bankruptcy filings.

There is now no dispute that the schedules and statement of affairs did not accurately disclose all of the assets and transfers of assets, for example, because they did not disclose some of the transactions or funds that had been funneled through the Eichs' trust account. Dean and Ann contend that they believed that the Eichs had accurately completed the schedules based on the information that they had provided. Dean and Ann both admit that they do not believe that the Eichs acted intentionally to harm them, but Ann believes that the inaccuracies in the schedules were the result of a lack of organization and failure to do some of the things that the Eichs should have done, while Dean believes that the failures were because the Eichs did not follow through and did not look at everything that he had given them or take the time to complete the schedules correctly. Dean asserts that he is not responsible for inaccuracies in the schedules, because the Eichs filled out the schedules, he gave them all of the information that he possibly could, and the Eichs did not request any additional information.

The parties agree that, on or about May 17, 2007, the United States Trustee filed an Adversary Complaint objecting to discharge in the bankruptcy proceeding, alleging that the Timmermans engaged in the following misconduct: failing to disclose assets and the transfer of assets in their statement of financial affairs and bankruptcy schedules; verifying the accuracy of the schedules and the statement of financial affairs in both their Chapter 12 and Chapter 7 bankruptcy petitions; confirming the accuracy of the schedules and the statement of affairs at the April 11, 2006, Section 341 meeting of creditors in their Chapter 12 bankruptcy proceeding and again at the March 19, 2007, Section 341 meeting of creditors in the Chapter 7 bankruptcy proceeding; knowingly and fraudulently making a false oath when they verified their schedules and their statement of financial affairs; and withholding information and documents from the Chapter 7 trustee. On June 16, 2007,

the Eich Law Firm filed Dean and Ann's answer to the United States Trustee's Adversary Complaint.

A few months later, on or about October 18, 2007, two new attorneys filed their appearances in the bankruptcy proceeding on behalf of Dean and Ann, and, on or about October 24, 2007, the Eichs filed a motion to withdraw. On October 31, 2007, shortly after new counsel appeared, one of the new attorneys filed on Dean and Ann's behalf a motion to dismiss the bankruptcy proceeding, arguing that, at the outset of the case, Dean and Ann failed to meet the eligibility requirements of Title 11, because they had not obtained credit counseling as required by 11 U.S.C. § 109(h)(1). On December 10, 2007, the bankruptcy court denied Dean and Ann's motion to dismiss, after having received objections from several creditors and the United States Trustee. On December 18, 2007, Dean and Ann's other new attorney filed on their behalf a notice of appeal to the Bankruptcy Appellate Panel of the denial of their motion to dismiss.

In February of 2008, Dean and Ann, the Trustee, United States Trustee Habbo Fokkena, and unsecured creditors UAP, Crow's Hybrid Seed Company, Farmers Cooperative Company, and Ag Partners, L.L.C., entered into an agreement (Settlement Agreement). *See* Defendants' Appendix at 61-68. The Settlement Agreement provided, in pertinent part, as follows:

> NOW, THEREFORE, in consideration of the above recitals and in consideration of the mutual covenants and agreements of the parties as contained herein, the parties agree as follows:
>
> 1. Trustee [Eide] will file and obtain Court Approval of a Motion to Compromise regarding the Objection to Exemptions and Timmermans['] resistance thereto. Said compromise shall provide that both Timmermans and Trustee agree that the Timmermans shall be allowed to repurchase the

equity in their homestead for 90% of its appraised value as determined by an appraiser who is mutually acceptable to the Trustee and Timmermans. Upon receipt of aforesaid payment, Trustee shall withdraw his Objection to Exemptions.

   2.    In Adversary Proceeding, 07-09079, Dean agrees that the Court may enter an Order denying his discharge under 11 U.S.C. § 727.

   3.    In Adversary Proceeding 07-09079, the US Trustee [Fokkena] agrees to dismiss the complaint against Ann.

   4.    UAP, Crow's, Farmers, and Ag Partners agree to refrain from taking any and all collection activities against Dean to collect upon Dean's pre-petition debt until the earlier of the resolution of Trustee's malpractice claim against R. Patrick and/or Ronald F. Eich, with prompt written notice by the Trustee to the parties hereto describing such resolution, or 3 years from date this agreement is approved by the Court.

   5.    Upon the entry of the Court's Order approving this agreement, Timmermans agree to dismiss the current appeal, BAP Case No. 07-6073.

   6.    The parties agree to sign and/or to cause their attorneys to sign all documents necessary to effectuate the intent and purposes of this Agreement.

Settlement Agreement at 2 (Defendants' Appendix at 62).

   As required in paragraph 1 of the Settlement Agreement, quoted above, on March 24, 2008, the attorney for the bankruptcy case trustee filed a Motion To Compromise, with the Settlement Agreement attached. On April 17, 2008, the bankruptcy court entered an order authorizing the trustee to compromise the pending matters pursuant to the terms and

conditions of the Settlement Agreement. Then, on May 13, 2008, the bankruptcy court entered an Order Re:  Motion For Entry Of Judgment, as follows:

> Pursuant to the agreement of the parties, approved by the court,
> IT IS ORDERED that judgment shall enter that the discharge of Dean Timmerman is denied.
> IT IS FURTHER ORDERED that the complaint of Habbo G. Fokkena, United States trustee, against Ann Timmerman is dismissed.

Defendants' Appendix at 70.  The parties agree that, if Dean had been granted a discharge in the bankruptcy proceeding, the unsecured creditors, including the four unsecured creditors who were parties to the Settlement Agreement, would have received very little (which the Timmermans clarify means $50,000 to $75,000) with respect to their unsecured claims.

Dean contends that the stress that he had previously been under because of pressure from UAP and ANB was exacerbated by the Eichs' mishandling of his bankruptcy proceeding.  He contends that the additional stress caused heart problems, including a rapid heart rate, for which he must take medication, as well as an inability to sleep.  Dean contends that the Eichs later admitted that they had never filed a Chapter 12 proceeding before and were confused by the new bankruptcy code.  Dean also contends that Ron Eich told him several times that he wished that he had not taken the case, because he was busy doing tax returns, and the case was complicated; told Dean that Eich believed that the Eichs had done things wrong; and told Dean that Eich had contacted his malpractice insurance carrier.  The Timmermans also contend that they have opinions, including testimony from one of Dean and Ann's new bankruptcy attorneys, the Assistant United States Trustee for the Northern District of Iowa, and an expert witness, that the Eichs'

conduct fell below professional standards and caused them injury and unnecessary expense in their bankruptcy proceeding.

## B. Procedural Background

On November 13, 2009, the Timmermans filed the Complaint And Jury Demand (docket no. 1) against the Eichs commencing this action and asserting jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The Timmermans assert the following claims against the Eichs: professional negligence in Count I, alleging that the Eichs breached the standard of care in their bankruptcy proceeding in numerous respects, and breach of express and/or implied warranty in Count II, alleging that the Eichs represented that they were qualified to carry out the responsibilities for which they were hired when, in fact, they were not. The Timmermans also seek punitive damages in "Count III" of their Complaint. The Timmermans pray for the following relief: all compensatory damages incurred by the plaintiffs due to the Eichs' wrongful conduct, including, but not limited to, payment of attorneys' fees incurred unnecessarily, loss of the benefit of non-exempt assets that were placed in the Eichs' trust account, being left with over one million dollars in non-dischargeable claims, and incurring additional expense by having to buy back their homestead from the bankruptcy trustee, as well as damages for emotional distress and physical health problems; punitive damages; interest; costs; and all other relief that may be just and equitable under Iowa law. On January 15, 2010, the Eichs filed an Answer (docket no. 12), denying the Timmermans' claims. Pursuant to an Order Setting Trial, Final Pretrial Conference, And Requirements For Final Pretrial Order (docket no. 16), trial in this matter is set during the two-week period beginning October 17, 2011.

On June 8, 2011, the Eichs filed the Motion For Summary Judgment (docket no. 25) that is now before me, asserting that the Trustee is not a real party in interest and lacks

standing, that the court lacks subject matter jurisdiction over the Timmermans' state-law claims, and that the Eichs are otherwise entitled to summary judgment on the Timmermans' claims on the merits, primarily because their injuries were caused by their own fraudulent acts. The Timmermans filed a Resistance (docket no. 34) on July 18, 2011, resisting almost all of the Eichs' grounds for summary judgment, and the Eichs filed a Reply (docket no. 36) on July 28, 2011. No party requested oral arguments on the motion for summary judgment in the manner required by local rules.

I regret that the press of other matters, including a two-week stint as a visiting judge in the District of the Northern Mariana Islands, prevented me from reaching this matter sooner.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 585 (2007) (internal quotation marks and citation omitted); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Summary judgment is particularly appropriate when only questions of law are involved. *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006). Where questions of fact are at issue, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment

is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence").

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue," *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323), and demonstrating that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005) ("The nonmoving party may not

'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))).

As the Eighth Circuit Court of Appeals has explained,

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, --- U.S. ----, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) *quoting Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Ricci*, 129 S. Ct. at 2677, *quoting Matsushita*, 475 U.S. at 587, 106 S. Ct. 1348.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*).

I will apply these standards to each of the grounds raised in the Eichs' Motion For Summary Judgment.

## B. The Trustee's Standing

The Eichs' first ground for summary judgment is that the Trustee does not have standing to assert any claims and is not the real party in interest. The Timmermans resist this part of the Eichs' Motion For Summary Judgment.

### 1. Arguments of the parties

The Eichs argue that a bankruptcy trustee can only bring those claims that are the property of the estate. They argue, further, that under Iowa law, which defines interests in property, a person has a legal interest in a cause of action when it accrues; a cause of action accrues when the wrongful act produces injury; and, with respect to a legal malpractice claim stemming from bankruptcy, no injury occurs until after the bankruptcy petition has been filed. Here, the Eichs argue that the Timmermans allege that the Eichs' negligent advice falls into several categories: negligent advice regarding what type of bankruptcy petition to file; negligent preparation of the schedules and disclosures to the bankruptcy court; negligent conversion of the case from a Chapter 12 to a Chapter 7 proceeding; negligent advice regarding transfers; negligent handling of the fee agreement; and failure to disclose to the Timmermans their inexperience in the pertinent area of the law. The Eichs argue that no negligent advice could have harmed Dean and Ann until after the bankruptcy petition was actually filed. The Eichs argue that, because Dean and Ann were not injured until after their bankruptcy petition was filed, their malpractice claim did not accrue until after the bankruptcy petition was filed and, hence, the malpractice claim is Dean and Ann's property, not the bankruptcy estate's property.

The Timmermans counter that the Eichs fundamentally misunderstand the difference between a Chapter 12 (family farm reorganization) and a Chapter 7 (liquidation) bankruptcy proceeding. They contend that, in Chapter 12 proceeding, 11 U.S.C. § 1207(a)(1) determines ownership of property interests acquired by the debtor after

commencement of the case, but prior to closure, dismissal, or conversion to a Chapter 7 proceeding. They argue that, under that statute, property interests acquired prior to conversion of the Chapter 12 proceeding to a Chapter 7 proceeding are property of the bankruptcy estate. They argue that numerous cases have applied the plain language of the statute to conclude that any property interests acquired by the debtor while a Chapter 12 proceeding is pending, and prior to conversion to a Chapter 7 proceeding, is property of the estate. Consequently, they argue that the Trustee is the real party in interest as to portions of their malpractice claim that accrued prior to the conversion of their bankruptcy to a Chapter 7 proceeding. Here, they argue that they have alleged three categories of negligent acts by the Eichs: negligent acts prior to the filing of the Chapter 12 petition; negligent acts between the filing of the Chapter 12 proceeding and the conversion to a Chapter 7 proceeding; and negligent acts at the time of the conversion to a Chapter 7 proceeding and thereafter. Thus, they contend that the Trustee is the real party in interest for claims belonging to the estate, those arising prior to the conversion to a Chapter 7 proceeding, while claims arising at the time of the conversion to a Chapter 7 proceeding and thereafter belong to the Timmermans.

The Eichs did not reply to the Timmermans' resistance on this issue.

### 2. *Analysis*

The parties have not identified, and I have not found, that the question of the Trustee's standing in this case is somehow a question of fact; rather, it appears to me to be a question of law on which summary judgment is particularly appropriate. *See, e.g.,* *Cremona*, 433 F.3d 617, 620.

As the Eighth Circuit Court of Appeals has explained,

> The property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of

16

> the case." 11 U.S.C. § 541(a)(1). Causes of action are
> interests in property and are therefore included in the estate;
> it follows that the trustee has standing under § 704(1) to assert
> causes of action that belonged to the debtor at the time of filing
> bankruptcy. *Mixon v. Anderson (In re Ozark Rest. Equip.*
> *Co.)*, 816 F.2d 1222, 1225 (8th Cir. 1987).

*In re Senior Cottages of Am., L.L.C.*, 482 F.3d 997, 1001 (8th Cir. 2007). The Eichs are

correct that, at least in the case of a Chapter 7 bankruptcy proceeding, whether a particular

cause of action arising under state law belonged to the debtor in bankruptcy or to someone

else is determined by state law. *Id.* (citing *Ozark Rest. Equip.*, 816 F.2d at 1225). The

Eichs are also correct that, "[i]n Iowa, a person has a legal interest in a cause of action

when it accrues, and that occurs when 'an aggrieved party has a right to institute and

maintain a lawsuit.'" *Lobberecht v. Chendrasekhar*, 744 N.W.2d 104, 107 (Iowa 2008)

(quoting *Dolezal v. Bockes*, 602 N.W.2d 348, 351 (Iowa 1999)). Finally, the Eichs are

correct that the Iowa Supreme Court has held that a claim of legal malpractice arising from

allegedly bad advice about whether to file a Chapter 7 or a Chapter 11 petition did not

cause harm until the bankruptcy petition was actually filed and, consequently, belonged

to the debtors, not the bankruptcy estate. *Collins v. Federal Land Bank of Omaha*, 421

N.W.2d 136, 139-40 (Iowa 1988) (also holding that claims of malpractice relating to other

transactions that caused injury before the bankruptcy petition was filed belonged to the

estate).

However, as the Eichs apparently tacitly acknowledge, under Chapter 12, property

of the estate is defined by 11 U.S.C. § 1207, which provides, in pertinent part, as

follows:

**§ 1207. Property of the estate**

(a) Property of the estate includes, in addition to the property specified in section 541 of this title—

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever occurs first. . . .

11 U.S.C. § 1207(a)(1). Thus,

> There is one wrinkle in cases, like the present one, which began as Chapter 12 proceedings but were converted to Chapter 7. Section 1207(a) of the Bankruptcy Code, which applies to Chapter 12 cases, expands the definition of property of the estate to include: "all property of the kind specified in such section [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7 of this title. . . ." 11 U.S.C. § 1207(a)(1). The practical effect of that expansion in the temporal limitation is to move the cutoff date for the acquisition of property from the filing of the bankruptcy case to the time it is converted under Chapter 7.

*In re Bracewell*, 454 F.3d 1234, 1237 n.1 (11th Cir. 2006); *see also id.* at 1239-40. "Under this provision, courts held that the post-conversion estate under Chapter 7 included the property acquired by the debtor after filing the petition under Chapter 12 but before conversion." *In re Bell*, 225 F.3d 203, 217 (2d Cir. 2000) (citing cases).

This statute clearly and plainly establishes that claims that accrued prior to the conversion of the bankruptcy to a Chapter 7 proceeding belong to the estate and may be asserted by the trustee. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with

the intentions of its drafters.'" (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)). Because many of the malpractice claims accrued—*i.e.*, the injury was felt—at the time of the filing of the Chapter 12 petition and between the filing of the Chapter 12 petition and its conversion to a Chapter 7 petition, *see Lobberecht*, 744 N.W.2d at 107; *Collins*, 421 N.W.2d at 139-40, all such malpractice claims belong to the estate, and the Trustee has standing to assert those claims. *In re Senior Cottages of Am., L.L.C.*, 482 F.3d at 1001 (the trustee has standing to assert claims that belong to the estate). On the other hand, Dean and Ann have standing to assert malpractice claims that accrued only at or after the conversion of the Chapter 12 bankruptcy proceeding to a Chapter 7 proceeding, and the Trustee does not.

The Eichs are not entitled to summary judgment on any pre-conversion malpractice claims by the Trustee on the ground that the Trustee does not have standing to assert those claims.

## C. Subject Matter Jurisdiction

The Eichs' second ground for summary judgment follows from their first: They contend that, because the claims asserted here are Dean and Ann's property, not the bankruptcy estate's property, this court lacks subject matter jurisdiction to hear Dean and Ann's state law claims. The Timmermans also resist summary judgment on this ground. Notwithstanding the failure of the Eichs' premise that no claims belong to the estate, I will consider further the Eichs' challenge to the court's subject matter jurisdiction.

### 1. Arguments of the parties

The Eichs argue that 28 U.S.C. § 157 is merely a procedural statute, not a jurisdictional one. Thus, they argue that this court must have subject matter jurisdiction pursuant to 28 U.S.C. § 1334, or not at all. They argue that § 1334 does not confer

jurisdiction here, because Dean and Ann's claims are neither core proceedings nor related to their bankruptcy case. They argue that any recovery will belong to Dean and Ann, not to the bankruptcy estate and, as such, creating a pot of money against which unsecured creditors can assert their claims outside of bankruptcy does not confer jurisdiction pursuant to § 1334.

The Timmermans argue that the fallacy of the Eichs' second argument for summary judgment is the same as the fallacy of their first one: Contrary to the Eichs' assertions, the Trustee does have standing to assert claims in this action. Thus, some of the potential recovery will belong to the bankruptcy estate. They argue that, under such circumstances, jurisdiction is proper under § 1334. They add that jurisdiction is proper for their related claims under § 157(c)(1) and § 1367.

Again, the Eichs offer no reply to the Timmermans' resistance to this ground for summary judgment.

### 2. *Analysis*

Again, at least in the circumstances presented here, I do not find that subject matter jurisdiction is a question of fact, but a question of law on which summary judgment is particularly appropriate. *See, e.g., Cremona*, 433 F.3d at 620.

As the Eighth Circuit Court of Appeals has explained,

> Jurisdiction over bankruptcy proceedings is governed by 28 U.S.C. § 1334(a)-(b), which provides that district courts have "original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See In re Marlar*, 432 F.3d 813, 814 (8th Cir. 2005). District courts may refer to bankruptcy judges any or all cases "under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11". 28 U.S.C. § 157(a).

*U.S. Commodity Futures Trading Comm'n. v. NRG Energy, Inc.*, 457 F.3d 776, 779 (8th Cir. 2006). Thus, § 1334 is the statute defining federal court jurisdiction as to bankruptcy matters, while § 157 defines the "referral jurisdiction" of the bankruptcy court for matters referred from the district court. *See id.* "An action is related to the bankruptcy case if 'it affects the amount of property available for distribution or the allocation of property among creditors.'" *In re Reeves*, 65 F.3d 670, 675 (8th Cir. 1995) (quoting *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987)). Because the Trustee is asserting malpractice claims that belong to the estate, those claims undoubtedly do affect the amount of property available for distribution, so that this court has subject matter jurisdiction over the Trustee's claims. *Id.* This court also has subject matter jurisdiction over Dean and Ann's bankruptcy malpractice claims, directly under § 1334(b), as those claims arise in the bankruptcy. *See, e.g., Grausz v. Englander*, 321 F.3d 467, 471-72 (4th Cir. 2003) (holding that the debtors' legal malpractice claim against their bankruptcy attorney was a claim "arising in" Title 11 for purposes of federal jurisdiction, because the proceeding would have no practical existence but for the bankruptcy); *Simmons v. Johnson, Curney & Fields, P.C.*, 205 B.R. 834, 836–41 (Bankr. W.D. Tex. 1997); *Billing v. Ravin Greenberg & Zackin, P.A.*, 150 B.R. 563, 565–67 (D.N.J. 1993), *rev'd on other grounds*, 22 F.3d 1242 (3d Cir. 1994); *In re SPI Communications & Marketing, Inc.*, 112 B.R. 507, 510-11 (Bankr. N.D.N.Y. 1990). This court also has subject matter jurisdiction over Dean and Ann's breach-of-warranty claim, as well, pursuant to 28 U.S.C. § 1367.

The Eichs are not entitled to summary judgment on the Timmermans' claims on the basis of lack of subject matter jurisdiction.

### D. Estoppel

The Eichs' third ground for summary judgment is that the Timmermans are estopped from obtaining damages relating to Dean's failure to obtain a discharge, because the Timmermans consented to the entry of a judgment that denied Dean's discharge owing to his fraudulent acts. The Timmermans deny that estoppel is applicable.

### 1.    Arguments of the parties

The Eichs argue that the United States Trustee objected to the discharge of Dean and Ann, because they had committed a number of intentional fraudulent acts in violation of 11 U.S.C. § 727. In essence, the Eichs argue that, by consenting to denial of discharge under § 727 as to Dean, the Timmermans admitted that Dean committed intentional, fraudulent acts as alleged by the United States Trustee. Furthermore, they argue that, because the court approved the Settlement Agreement and the Motion To Compromise and entered judgment denying Dean a discharge, the court conclusively determined that Dean committed the fraudulent acts identified in the United States Trustee's Adversary Complaint. Thus, the Eichs argue that it was Dean's fraudulent acts that resulted in his inability to get a discharge, not any conduct of the Eichs.

The Eichs argue that, under these circumstances, the Timmermans are precluded from arguing that the denial of Dean's discharge proximately resulted from anything other than Dean's fraudulent acts. They also argue that Ann has no claim that she was harmed by denial of a discharge on the different ground that she *was* granted a discharge. The Eichs also argue that the Timmermans are judicially estopped to claim that Dean's failure to obtain a discharge was caused by the Eichs' negligence. They argue that this is so, because the Timmermans represented to the bankruptcy court that Dean should be denied a discharge pursuant to § 727, and the court adopted that position and entered judgment accordingly, estopping the Timmermans from taking any other position in this litigation.

The Eichs argue that any other result would allow the Timmermans and the creditors who entered into the Settlement Agreement to abuse the judicial process to obtain more than they would have, if the Eichs had performed as the Timmermans allege that they should have.

The Timmermans' theme, in response, is that, because of the Eichs' gross negligence, Dean was put in a situation where he was forced to work out the best deal that he could. They argue that Dean neither admitted nor did the bankruptcy court find that he engaged in any fraudulent acts barring his discharge. They point out that, although the Motion To Compromise mentions § 727, it does not mention any specific subsection of that statute, and the language of the Settlement Agreement makes clear that Dean was not admitting anything, just agreeing to the denial of discharge. Similarly, they point out that there is no finding at all by the bankruptcy court that Dean committed the fraudulent acts identified in the United States Trustee's Adversary Complaint. The court's order simply adopted the parties' settlement.

Moreover, the Timmermans argue that issue preclusion does not apply here. Specifically, they argue that the issue in the bankruptcy proceeding, whether to adopt the settlement, is different from the issue here, whether or not Dean committed any fraudulent acts. They also argue that the issue of Dean's supposed fraudulent acts was not even litigated in the bankruptcy court. Indeed, they point out that the Settlement Agreement indicates that the parties contemplated further litigation of that issue in these proceedings. The Timmermans also cite numerous cases refusing to find that a consent judgment involved actual litigation of any issue or permitted issue preclusion. As to the last elements of issue preclusion, the Timmermans argue that, even to the extent that the bankruptcy court's order was undeniably final, it did not finally resolve the pertinent issue, and there is no indication that determination of whether Dean committed fraud was

essential to the judgment or the denial of Dean's discharge. As to the Eichs' reliance on judicial estoppel, the Timmermans argue that they are not judicially estopped to assert their claims here, because there is nothing clearly inconsistent between their positions in the prior and present cases; no chance that either the bankruptcy court or this court would be misled; they are not gaining any unfair advantage; and Ron Eich originally advised the Timmermans to consent to denial of discharge.

The Eichs' reply focuses on judicial estoppel, rather than issue preclusion. The Eichs assert that, because the United States Trustee asserted only certain violations of § 727, Dean's consent to denial of discharge must necessarily be an admission that he committed at least one of the violations alleged. They also argue that judicial estoppel applies, because the issues are the same in both proceedings, where the Timmermans did not assert a reliance on counsel defense to the denial of discharge, so that only Dean's fraudulent conduct was at issue.

### 2. *Analysis*

The Eighth Circuit Court of Appeals reviews a district court's determination that an issue is precluded by issue preclusion *de novo*. *Ginters v. Frazier*, 614 F.3d 822, 825 (8th Cir. 2010); *see also Boudreau v. Wal-Mart Stores, Inc.*, 249 F.3d 715, 719 (8th Cir. 2001) ("A trial court's determination as to whether the legal prerequisites for issue preclusion have been met on the facts before it is a mixed question of law and fact, subject to *de novo* review by this court."). Where I do not find that the question of issue preclusion here is subject to any disputed questions of fact, but turns on the legal question of whether the prerequisites are met, it is particularly appropriate for determination on summary judgment. *See, e.g., Cremona*, 433 F.3d at 620.

As the Eighth Circuit Court of Appeals has explained,

> In the Eighth Circuit, issue preclusion has five elements:
> (1) the party sought to be precluded in the second suit must
> have been a party, or in privity with a party, to the original
> lawsuit; (2) the issue sought to be precluded must be the same
> as the issue involved in the prior action; (3) the issue sought to
> be precluded must have been actually litigated in the prior
> action; (4) the issue sought to be precluded must have been
> determined by a valid and final judgment; and (5) the
> determination in the prior action must have been essential to
> the prior judgment.

*Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) (quoting *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997)); *accord Ginters*, 614 F.3d at 826 (quoting *Robinette*); *see also Haberer v. Woodbury Cnty.*, 188 F.3d 957, 961-62 (8th Cir. 1999) (identifying essentially the same issues for issue preclusion under Iowa law).

Here, there is no dispute that the party sought to be precluded in this suit, Dean, is the same as the party in the bankruptcy lawsuit. *Id.* (same party requirement). There is also no dispute that the issue of whether or not Dean committed fraudulent acts was *raised* in the bankruptcy litigation by the United States Trustee's Adversary Complaint, just as it is raised here. *Id.* (same issue requirement). The Eichs' reliance on issue preclusion fails, however, on the remaining three requirements.

The Eighth Circuit Court of Appeals has suggested that an issue was not "actually litigated," for purposes of issue preclusion, unless it was addressed on the merits, either explicitly or implicitly. *See Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cnty. v. Beebe*, 578 F.3d 753, 759-60 (8th Cir. 2009). The fact that an issue was *raised* in the prior proceeding is not enough, if the court dismisses a case without addressing the issue on the merits. *Id.* Similarly, as the Timmermans point out, RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment *e*, states the following as to the "actually litigated" requirement:

A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.

\* \* \*

An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties. A stipulation may, however, be binding in a subsequent action between the parties if the parties have manifested an intention to that effect. Furthermore under the rules of evidence applicable in the jurisdiction, an admission by a party may be treated as conclusive or be admissible in evidence against that party in a subsequent action.

In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action. The judgment may be conclusive, however, with respect to one or more issues, if the

> parties have entered an agreement manifesting such an
> intention.

Similarly, the Eighth Circuit Court of Appeals has held that "[a] fact established in prior litigation not by judicial resolution but by stipulation has not been 'actually litigated' and thus is the proper subject of proof in subsequent proceedings." *United States v. Young*, 804 F.2d 116, 118 (8th Cir. 1986). As the court explained, "A contrary rule, commentators reason, would discourage parties from compromising and narrowing issues because of the possible future preclusive effect of their decisions." *Id.* (citing RESTATEMENT § 27, cmt. *e*). In that case, the court held that there was no preclusive effect, where the parties had not actually disputed the relevant points in the prior proceedings. *Id.*

Moreover, the United States Supreme Court and other courts have held that a consent judgment does not have issue-preclusive effect, citing RESTATEMENT § 27, comment *e*. *Arizona v. California*, 530 U.S. 392, 414 (2000); *see also Nichols v. Board of Cnty. Cmm'rs of Cnt. of La Plata, Colo.*, 506 F.3d 962, 968-69 (10th Cir. 2007) (holding, under Colorado law, and citing RESTATEMENT § 27, cmt. *e*, that a consent judgment pursuant to a settlement agreement did not have and was not intended to have issue-preclusive effect, because the issues were not actually litigated); *Talmage v. Harris*, 486 F.3d 968, 974 (7th Cir. 2007) (recognizing that, under Wisconsin law, when a case is resolved by settlement or stipulation, courts will find that the "actually litigated" and "valid final judgment" requirements for issue preclusion have not been satisfied); *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 310-14 (6th Cir. 2005) (under Michigan law, an issue not actually submitted to a trier of fact and thereafter determined, such as an issue not challenged in the prior litigation, was not actually litigated, and has no preclusive effect, and under New York law, an

underlying point in a settlement agreement that was uncontested was not actually litigated in the prior proceeding approving the settlement, and has no preclusive effect, because the issue when the court approved the settlement was only the fairness of the settlement, not the validity of the liens that were the underlying issue, citing *Arizona v. California*, 530 U.S. at 414, for the latter proposition); *United States v. Botefuhr*, 309 F.3d 1263, 1282-83 (10th Cir. 2002) (the parties were not precluded from litigating the value of stock by a stipulation in prior litigation setting a fair market value for the stock, because there was no manifest intent to be bound in subsequent litigation and the prior court never adjudicated the value of the stock, citing, *inter alia*, RESTATEMENT § 27, cmt. *e*).[3]

Nothing about the treatment of the issue of Dean's alleged fraudulent acts in the parties' Settlement Agreement or the bankruptcy court's order adopting the parties' Settlement Agreement and denying Dean a discharge suggests anything other than judgment by consent with no intent to give the judgment any issue-preclusive effect. *See* RESTATEMENT § 27, cmt. *e* (judgment by consent ordinarily does not have issue-preclusive effect in the absence of a contrary indication of intent of the parties); *Arizona v. California*, 530 U.S. at 414 (relying on RESTATEMENT § 27, cmt. *e*); *Nichols*, 506 F.3d at 968-69 (same). The parties to the Settlement Agreement simply did not dispute that point. *See Young*, 804 F.2d at 118. Contrary to the Eichs' contentions, the Settlement Agreement contains no express or implied admission that Dean engaged in any fraudulent acts, simply because he agreed to denial of a discharge. The intent of the parties to the Settlement Agreement could not be clearer: They did *not* intend that the Settlement Agreement or subsequent consent judgment denying Dean a discharge would have issue-

---

[3]The effect of a stipulation or consent judgment may be different, for purposes of *claim* preclusion. *See, e.g., Arizona v. California*, 530 U.S. at 414.

preclusive effect, where they clearly anticipated litigation of that issue, among others, in a subsequent malpractice action by Dean and the Trustee against the Eichs. Absolutely nothing in the Settlement Agreement, Motion To Compromise, or the bankruptcy court's consent judgment indicated that the issue of whether or not Dean had engaged in fraudulent acts was submitted to the bankruptcy court for final determination as part of approval of the settlement. Instead, the bankruptcy court's language is that Dean was denied a discharge "[p]ursuant to the agreement of the parties, approved by the court." The order does not even cite § 727 as the basis for the denial of discharge. *Spectrum Health Continuing Care Group*, 410 F.3d at 310-14 (under Michigan law, an issue not actually submitted to a trier of fact and thereafter determined, such as an issue not challenged in the prior litigation, was not actually litigated, and has no preclusive effect, and under New York law, an underlying point in a settlement agreement that was uncontested was not actually litigated in the prior proceeding approving the settlement, and has no preclusive effect, because the issue when the court approved the settlement was only the fairness of the settlement, not the validity of the liens that were the underlying issue, citing *Arizona v. California*, 530 U.S. at 414). The fact that the issue was *raised* in the prior litigation simply is not enough. *Friends of Lake View Sch. Dist. Incorporation No. 25 of Phillips Cnty.*, 578 F.3d at 759-60. Under the circumstances presented here, the issue of whether or not Dean engaged in fraudulent acts was not "actually litigated," finally decided, or necessary to the final judgment, and it is not now precluded from consideration in this subsequent litigation. *Robinette*, 476 F.3d at 589.

The Eichs' assertion of judicial estoppel of the issue is equally unavailing. "Judicial estoppel is an equitable doctrine, invoked by a district court at its discretion." *Capella Univ., Inc. v. Executive Risk Specialty Ins. Co.*, 617 F.3d 1040, 1051 (8th Cir. 2010)

(citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). As the Eighth Circuit Court of Appeals has explained,

> The judicial estoppel doctrine exists to protect the integrity of the judicial process. [*Stallings v. Hussmann Corp.*, 447 F.3d 1041,] 1047 [(8th Cir. 2006)]. While the doctrine is not subject to a finite set of elements or factors, three factors have recurred in courts' analyses and have been applied by the United States Supreme Court and this court:
>
> > First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.
>
> *New Hampshire v. Maine*, 532 U.S. at 750-51, 121 S. Ct. 1808 (internal citations and quotations omitted).

*Capella Univ., Inc.*, 617 F.3d at 1051; *United States v. Morse*, 613 F.3d 787, 792 (8th Cir. 2010). If the challenging party fails to satisfy the "basic requirement" that the challenged party's arguments were "clearly inconsistent," then there is no basis for judicial estoppel. *United States v. Smith*, 575 F.3d 521, 527 (8th Cir. 2009). Moreover, in *Capella University*, the Eighth Circuit Court of Appeals accepted, for the sake of argument, that the challenged party's positions in the successive lawsuits were inconsistent, but nonetheless held that the district court did not abuse its discretion in declining to apply judicial estoppel, because the prior court did not grant the challenged party's request for

30

fees and costs, so that there was no risk of inconsistent court determinations threatening judicial integrity, if the second court considered the challenged party's claim for fees and costs. *Capella Univ., Inc.*, 617 F.3d at 1051; *see also Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 981-82 (8th Cir. 2009) ("There is no mechanical test, however, and ultimately, because the rule is intended to prevent improper use of judicial machinery, the discretionary determination to apply the doctrine of judicial estoppel is made on a case-by-case basis.").

Again, I do not find any admission by Dean that he committed fraudulent acts in his agreement to denial of discharge as part of a Settlement Agreement, and certainly no agreement not to litigate the issue of the Eichs' malpractice even over assertions that his own wrongdoing led to the denial of his discharge. Thus, I do not find any inconsistent arguments, and the Eichs' assertion of judicial estoppel fails on this "basic requirement." *Smith*, 575 F.3d at 527. Yet, even if I were to accept, for the sake of argument, that Dean is somehow taking inconsistent positions concerning whether or not he committed fraudulent acts, I would still not apply the doctrine of judicial estoppel in the circumstances presented here. *Gray*, 567 F.3d at 981-82 ("[T]he discretionary determination to apply the doctrine of judicial estoppel is made on a case-by-case basis."). The bankruptcy court did not determine that Dean had committed any fraudulent acts, so there is no risk of inconsistent court determinations threatening judicial integrity, if I reach that issue in this subsequent lawsuit. *Capella Univ., Inc.*, 617 F.3d at 1051.

Therefore, the Eichs are not entitled to summary judgment on the Timmermans' malpractice claim on the grounds of issue preclusion or judicial estoppel.

### E. In Pari Delicto

As their fourth ground for summary judgment, the Eichs assert that the Timmermans' claims are barred by the doctrine of *in pari delicto*. This ground is, again, premised, at least in part, on the Eichs' assertion that the bankruptcy court found that Dean violated § 727. The Timmermans assert that summary judgment for the Eichs is not appropriate on the basis of an *in pari delicto* defense.

### 1. *Arguments of the parties*

The Eichs argue that a bankruptcy court must grant a discharge, unless the debtor has committed one or more of the violations enumerated in § 727. Thus, the Eichs reiterate that, by consenting to the denial of discharge, Dean admitted that he committed fraudulent acts, and had he not made such an admission, there would have been no grounds to deny him a discharge.

Moreover, the Eichs assert that both elements of the doctrine of *in pari delicto* are met here, because Dean is guilty of fraudulent conduct, and he is equally or more culpable than they are. They argue that Dean and Ann both signed the bankruptcy petition and schedules under penalty of perjury, thereby attesting to their accuracy. They also argue that Dean and Ann both testified at the creditors' meetings that the schedules were accurate. The Eichs assert that Dean and Ann cannot blame their attorneys for inaccuracies, because they bore the ultimate responsibility for the accuracy of the petitions and schedules. They also assert that they did not counsel or advise Dean or Ann to testify falsely. The Eichs also argue that Dean and Ann cannot assert that they were misled by their attorneys, because if that were the case, they would not have the requisite fraudulent intent, but they admitted to Dean's fraudulent intent by consenting to denial of Dean's discharge.

In response, the Timmermans reiterate that there was no admission of wrongdoing on Dean's part and no finding of wrongdoing by the bankruptcy court. Moreover, they contend that there is no basis for finding that they and the Eichs were *equally* at fault. Instead, they argue that, at the very least, a reasonable jury could find that the Eichs were more culpable than Dean or Ann, who had done their best to provide the Eichs with all relevant information, then relied on the Eichs to use and include all of the appropriate information. They also argue that the cases cited by the Eichs do not stand for the proposition that attorneys who negligently fill out forms, advise their clients to sign them, assure the clients that they are correct, and make them sign the forms in a hurry without a chance to review them, can somehow avoid liability when the forms are not correct. They also argue that there is no showing that they knew that the forms were incorrect when they attested to their accuracy.

In reply, the Eichs argue that their alleged negligence in completing forms is not a ground for denial of discharge, fraudulent acts of the debtors are, and Dean has admitted fraudulent conduct. They argue that Dean and Ann had the opportunity to clear up any mistakes made by their attorneys. They also argue that a debtor who signs forms without reading them must accept the consequences of that failing.

### 2.    *Analysis*

The Eichs reassert the contention, which I have now rejected three times, that the Settlement Agreement and resulting judgment necessarily mean that Dean admitted fraudulent acts and the bankruptcy court found that he had engaged in fraudulent acts. The new wrinkle to this argument here is the Eichs' assertion that § 727 provides the exclusive grounds to deny a debtor a discharge, so that denial of a discharge was not possible without a finding of a § 727 violation. Courts have recognized that § 727 states the exclusive grounds to deny a Chapter 7 debtor a discharge. *In re Michael*, 433 B.R. 214,

33

220 (Bankr. N.D. Ohio 2010) ("[A] debtor's discharge may only be denied if at least one of those limitations on discharge expressed in § 727(a) is shown to exist."); *Berstein v. Zeiss, Inc. (In re Berstein)*, 78 B.R. 619, 622 (S.D. Fla. 1987). Nevertheless, this argument fares no better than its predecessors. Nothing about the exclusivity of the grounds for denial of a discharge in § 727 prohibits denial of discharge by consent and, as explained above, Dean did not admit, and the bankruptcy court did not find any grounds for denial of discharge "by at least a preponderance of the evidence." *Id.* at 220.

As to the Eichs' *in pari delicto* defense, the Eighth Circuit Court of Appeals has explained,

> *Pari delicto* is Latin for 'equal fault.' The *in pari delicto* doctrine is the principle that a plaintiff who participated in wrongdoing may not recover damages based on the wrongdoing. Black's Law Dictionary 806 (8th ed.2004).

*In re Senior Cottages of Am., L.L.C.*, 482 F.3d at 999 n.3. More specifically, the doctrine "derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In case of equal or mutual fault . . . the position of the [defending] party . . . is the better one.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (quoting BLACK'S LAW DICTIONARY 711 (5th ed. 1979)); *accord General Car & Truck Leasing Sys., Inc. v. Lane & Waterman*, 557 N.W.2d 274, 279 (Iowa 1996) (recognizing applicability of the doctrine of *in pari delicto* to an attorney malpractice claim, noting the application of the doctrine involves a "culpability element," which requires that the plaintiff has been guilty of illegal or fraudulent conduct, and proof that the plaintiff was equally or more culpable than the defendant or acted with the same or greater knowledge as to the illegality or wrongfulness of the transaction). The Eighth Circuit Court of Appeals "has held that the defense of *in pari delicto* can bar a claim by a bankruptcy trustee against a third party for pre-petition harm to a debtor when the debtor's agents colluded in the wrongful conduct alleged." *In*

*re Senior Cottages of Am., L.L.C.*, 482 F.3d at 1005. It would follow that the defense could also bar a claim by a bankruptcy debtor against a third party for pre-petition or post-petition harm to a debtor when the debtor himself or herself colluded in or engaged in the wrongful conduct alleged.

The Eichs are correct that a debtor does bear a substantial burden to verify the correctness of bankruptcy forms and schedules. *See, e.g., In re Retz*, 606 F.3d 1189, 1199 (9th Cir. 2010) (the debtor is required to attest that he has read the schedules and statement of affairs "to ensure to the greatest extent possible that the information turned over to the bankruptcy court is accurate"); *see also In re Searles*, 317 B.R. at 378 ("The continuing nature of the duty to assure accurate schedules of assets is fundamental because the viability of the system of voluntary bankruptcy depends upon full, candid, and complete disclosure by debtors of their financial affairs."). That does not mean, however, that bankruptcy attorneys who engaged in malpractice in the preparation of the debtor's filings, in providing bankruptcy advice, or in litigating a debtor's bankruptcy can necessarily raise *in pari delicto* to bar the debtor's or the trustee's malpractice claims, where the debtor signed or verified forms and schedules ultimately shown to be erroneous, in the absence of proof that the debtor engaged in fraud and the attorney was merely negligent. *See, e.g., In re Gosman*, 382 B.R. 826, 838 (S.D. Fla. 2007) (holding that actual fraud of the debtor is more objectionable than negligence of the attorney, so that dismissal of a malpractice claim on the basis of *in pari delicto* was appropriate). Again, there has been no admission or adjudication of fraudulent acts by Dean or Ann. Indeed, Dean and Ann contend that they were misled *by the Eichs* into believing that the bankruptcy forms and schedules were correct and reflected all of the information that they had provided. *Cf. In re Almasri*, 378 B.R. 550, 556 (Bankr. N.D. Ohio 2007) (declining to dismiss a complaint of bankruptcy attorney malpractice based on *in pari delicto*, where

the trustee alleged in the complaint that the debtor informed his counsel of the existence of the business account, concealment of which led to revocation of the debtor's discharge, and that it was the debtor's counsel who omitted the information).

Moreover, on the issue of relative fault between the Eichs, on the one hand, and Dean and Ann, on the other, the Timmermans have, at the very least, generated genuine issues of material fact that Dean and Ann reasonably relied on the Eichs to disclose all of the required information by pointing to evidence that they provided all of the farm account books, bank statements, receipts, lease papers, and financial paperwork in Dean and Ann's possession for the years 2005 and 2006; the Eichs required Dean and Ann to sign and file documents in a rush without time to review them first; the Eichs were aware of the life insurance proceeds and other funds run through their trust account, but failed to list the life insurance proceeds; the Eichs knowingly misrepresented that Dean and Ann had obtained credit counseling; and the Eichs provided no advice or erroneous advice, such as suggesting that Dean and Ann transfer assets to their son. *See* FED. R. CIV. P. 56(e) (the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial"); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik*, 47 F.3d at 957)). A rational finder of fact could find for the Timmermans and reject the Eichs' *in pari delicto* defense. *Torgerson*, 643 F.3d at 1042-43.

The Eichs are not entitled to summary judgment on the basis of their *in pari delicto* defense.

## F. Insufficient Evidence Of Emotional Distress

Next, the Eichs seek summary judgment on Dean and Ann's prayers for emotional distress damages. The Eichs contend that Dean and Ann have not suffered any physical injury as a result of the alleged malpractice, as required to recover emotional distress damages under Iowa law. The Timmermans concede that Ann cannot obtain emotional distress damages, because she has no physical injury, but they argue that Dean can.

### 1. Arguments of the parties

The Eichs assert that, under Iowa law, the general rule is that, in cases grounded in negligence, emotional distress damages are not recoverable unless accompanied by physical injury. The Eichs assert that there is no evidence at all that Ann suffered any physical injury allegedly resulting from their malpractice. They also argue that Dean's assertions of emotional distress causing a rapid heart rate and palpitations, and requiring treatment with prescriptions, is insufficient, because the sole medical evidence offered in support of that contention attributes the stress generally to Dean's "financial concerns," not to their alleged malpractice. In circumstances such as these, the Eichs argue that expert evidence is required to demonstrate the source of the stress. They also point out that Dean admitted that he suffered severe stress even before contacting the Eichs about his bankruptcy. The Eichs also argue that Dean cannot avail himself of the exception to the physical injury requirement, because a duty to exercise ordinary care to avoid causing emotional distress does not arise from the attorney-client relationship in bankruptcy proceedings. Finally, the Eichs assert that the Iowa Supreme Court has held that damages for emotional distress are not recoverable for a claim of legal malpractice arising out of a bankruptcy.

In response, the Timmermans concede that their prayer for emotional distress damages will be limited to Dean, because Ann suffered no physical injury. As to Dean,

the Timmermans also concede that the medical evidence does not distinguish between stress caused by the underlying financial problems and the stress caused by the Eichs' negligent handling of the bankruptcy proceeding. Nevertheless, they argue that it is disingenuous to argue that Dean's financial problems were not directly related to the Eichs' malpractice, in that he incurred numerous additional expenses and his debts were not discharged, because of the Eichs' negligence. They also point to Dean's evidence that his emotional distress symptoms were exacerbated by the Eichs' negligence. They assert that such aggravation of existing emotional distress is compensable.

In reply, the Eichs contend that the Timmermans have expressly conceded that Ann cannot obtain emotional distress damages and have implicitly conceded that Dean cannot either, because his expert evidence is insufficient. The Eichs also contend that Dean's assertion that his stress was aggravated does not demonstrate that he suffered any physical injury as a result of the alleged malpractice.

### 2. *Analysis*

Although it is not the initial thrust of the Eichs' argument for summary judgment on Dean and Ann's prayer for emotional distress damages, I find that the dispositive issue here is that emotional distress damages simply are not available under Iowa law for negligence of a bankruptcy attorney. As the Iowa Supreme Court has explained,

> The majority view among American jurisdictions is that emotional distress is not a reasonably foreseeable consequence of and does not "naturally ensue" from an act of legal malpractice. *Merenda [v. Superior Court]*, 4 Cal. Rptr. 2d [87,] 89, 91 [(1992)] ("precedent runs strongly against recovery [of emotional distress damages] in cases of legal malpractice."); *see also Smith v. Superior Court*, 10 Cal. App. 4th 1033, 13 Cal. Rptr. 2d 133, 136 (1992); *McClain v. Faraone*, 369 A.2d 1090, 1092, 1094 (Del. Super. Ct. 1977) (emotional distress resulting from loss of residential property

was not natural and probable consequence of negligent title search); *Maere v. Churchill*, 116 Ill. App. 3d 939, 72 Ill. Dec. 441, 444, 452 N.E.2d 694, 697 (1983) ("Even though real estate is unique and the attorney-client relationship is a fiduciary one, we are unable to conclude that serious emotional disturbance is a particularly likely result of an attorney's breach of contract in his examination of title to real estate."). Only in "special cases involving peculiarly personal subject matters" do the majority of jurisdictions recognize that mental anguish may be a foreseeable damage resulting from attorney negligence. *See, e.g., Oswald [v. LeGrand]*, 453 N.W.2d [634,] 639 [(Iowa 1990)]; *Selsnick v. Horton*, 96 Nev. 944, 620 P.2d 1256, 1257 (1980).

*Lawrence v. Grinde*, 534 N.W.2d 414, 422 (Iowa 1995). The court then held,

Based on our precedents in this area of law and the reasoning of other courts on the subject, we believe that recognition of emotional distress damages as a result of the negligence of a bankruptcy attorney in completing bankruptcy forms would constitute a clear departure from the narrow circumstances in which emotional distress damages have previously been recoverable.

A bankruptcy attorney's duty to competently manage the bankruptcy process is not "'so coupled with matters of mental concern or solicitude, or with the feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering.'" *Oswald*, 453 N.W.2d at 639 (quoting *Taylor v. Baptist Medical Ctr.*, 400 So. 2d 369, 374 (Ala. 1981)). Moreover, the claimed emotional distress is too far removed from the defendants' negligent conduct to cause the imposition of a duty and does not naturally ensue from the acts complained of. We therefore hold that the trial court erred as a matter of law in submitting the claim of severe emotional distress to the jury.

*Lawrence*, 534 N.W.2d at 423; *and compare dePape v. Trinity Health Sys., Inc.*, 242 F. Supp. 2d 585, 615-17 (N.D. Iowa 2003) (holding that emotional distress damages were available for malpractice by an immigration attorney).

For the same reasons that the Iowa Supreme Court rejected emotional distress damages for malpractice of a bankruptcy attorney in *Lawrence*, I now reject such damages in this bankruptcy attorney malpractice case. Therefore, the Eichs are entitled to summary judgment on Dean and Ann's prayers for emotional distress damages.

### G.  Breach Of Warranty

The Eichs assert that, under Iowa law, a claim for breach of warranty sounds in negligence and is subsumed by a professional negligence claim, citing *Kemin Industries, Inc. v. KPMG Peat Marwick, L.L.P.*, 578 N.W.2d 212 (Iowa 1998). The Timmermans agree that their claim for breach of warranty is subsumed by their professional negligence claim, in light of *Kemin*. Therefore, the Eichs are entitled to summary judgment on the Timmermans' breach-of-warranty claim.

### H.  Punitive Damages

The Eichs' last argument is that they are entitled to summary judgment on the Timmermans' claim for punitive damages, because the Eichs did not act with malice or engage in willful or wanton conduct. The Timmermans resist summary judgment on the issue of punitive damages.

#### 1.      Arguments of the parties

The Eichs argue that, even viewed in the light most favorable to the Timmermans, the evidence demonstrates only that they were negligent in advising the Timmermans regarding the bankruptcy. They assert that there is simply no evidence that their conduct

was willful and wanton or that they acted with malice. Indeed, they argue that there is no evidence that they acted to harm their clients.

The Timmermans contend that their prayer for punitive damages should be submitted to the jury. They contend that the evidence shows at least that the Eichs acted in reckless disregard of their rights, *i.e.*, that the Eichs acted with "legal malice." They contend that it should have been obvious to the Eichs that they were jeopardizing Dean and Ann's rights when they took their case, with very little bankruptcy experience, at a time when they were too busy to represent Dean and Ann adequately. They contend that a jury question on punitive damages is even more clearly raised, when that evidence is combined with evidence that the Eichs deliberately failed to reveal to the bankruptcy court that over $100,000 in Dean and Ann's funds had gone through the Eichs' trust account at the Eichs' direction and evidence that Ron Eich advised Dean to commit bankruptcy fraud by transferring assets to his son.

In reply, the Eichs assert that Dean and Ann have admitted that the Eichs did not try to hurt them or intentionally falsify any of the schedules, but simply made mistakes They assert that the evidence does not rise to the level required to establish legal malice.

## 2. *Analysis*

Punitive damages are only available under Iowa law, if the claimant proves, by clear, convincing, and satisfactory evidence, that the defendant willfully and wantonly disregarded the claimant's rights. IOWA CODE § 668.1(1)(a); *Van Sickle Constr. Co. v. Wachovia Commercial Mortg., Inc.*, 783 N.W.2d 684, 689 (Iowa 2010). As the Iowa Supreme Court has explained,

> Willful and wanton conduct involves an intentional, unreasonable act ""'in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow.'"" *Cawthorn v. Catholic Health Initiatives*

41

> *Corp.*, 743 N.W.2d 525, 529 (Iowa 2007) (quoting *Kiesau v.*
> *Bantz*, 686 N.W.2d 164, 173 (Iowa 2004)). Such an act is
> ""usually accompanied by a conscious indifference to the
> consequences.""" *Id.* More than negligent conduct is required
> to support a punitive damage award. *Id.* It was Van Sickle's
> burden to prove Wachovia acted with actual or legal malice.
> *Id.* Actual malice may be shown by personal spite, hatred, or
> ill will. ""[L]egal malice may be shown by wrongful conduct
> committed with a willful or reckless disregard of the rights of
> another.""" *Id.* (quoting *Wolf v. Wolf*, 690 N.W.2d 887, 893
> (Iowa 2005)).

*Van Sickle Constr. Co.*, 783 N.W.2d at 689-90.

Although it is a very close question, and one that I am likely to revisit based on the evidence presented at trial, I believe that the Timmermans have pointed to evidence from which a rational finder of fact could find that the Eichs acted with "legal malice," in what was otherwise only negligent handling of Dean and Ann's bankruptcy. *Torgerson*, 643 F.3d at 1042-43. As the Timmermans assert, there is a smack of reckless disregard of their rights in the Eichs' failure to reveal to the bankruptcy court that over $100,000 in Dean and Ann's funds had gone through the Eichs' trust account at the Eichs' direction and evidence that Ron Eich advised Dean to commit bankruptcy fraud by transferring assets to his son. *Van Sickle Constr. Co.*, 783 N.W.2d at 690 (defining "legal malice" as, *inter alia*, "reckless disregard of the rights of another").

Therefore, the Eichs are not entitled to summary judgment on the Timmermans' prayer for punitive damages.

### III. CONCLUSION

Upon the foregoing, the Eichs' June 8, 2011, Motion For Summary Judgment (docket no. 25) is **granted in part and denied in part**, as follows:

1. The motion is **denied** as to standing of the Trustee;

2. The motion is **denied** as to lack of subject matter jurisdiction;

3. The motion is **denied** as to issue preclusion and judicial estoppel;

4. The motion is **denied** as to the Eich's *in pari delicto* defense;

5. The motion is **granted** as to Dean and Ann's prayers for emotional distress damages;

6. The motion is **granted** as to the Timmermans' breach of warranty claim; and

7. The motion is **denied** as to Dean and Ann's prayer for punitive damages.

**IT IS SO ORDERED.**

**DATED** this 12th day of September, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA