**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

DEAN TIMMERMAN, ANN
TIMMERMAN, and LARRY EIDE,
solely in his capacity as Chapter 7
Bankruptcy Trustee,

        Plaintiffs,

vs.

RONALD F. EICH, R. PATRICK
EICH, and EICH LAW FIRM, P.C.,

        Defendants.

No. C 09-3072-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING MOTIONS IN
LIMINE**

<u>FILED UNDER SEAL</u>

---

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  **A. Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
  **B. Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
  **A. Rule 104 And Preliminary Question Of Admissibility** . . . . . . . . . . . . 8
  **B. Applicable Rules Of Evidence** . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  **C. The Timmermans' Motion In Limine** . . . . . . . . . . . . . . . . . . . . . 13
    **1. Arguments of the parties** . . . . . . . . . . . . . . . . . . . . . . . 13
    **2. Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
  **D. The Eichs' Motion In Limine** . . . . . . . . . . . . . . . . . . . . . . . . . 25
    **1. Evidence of malpractice insurance** . . . . . . . . . . . . . . . . . . 25
      **a. Arguments of the parties** . . . . . . . . . . . . . . . . . . 25
      **b. Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    **2. Evidence of disciplinary actions** . . . . . . . . . . . . . . . . . . 30
      **a. Arguments of the parties** . . . . . . . . . . . . . . . . . . 31
      **b. Analysis** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**III. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

In this action, the plaintiff farmers assert that the defendant bankruptcy attorneys were professionally negligent in their bankruptcy case. As the case approaches trial, it is time to address motions in limine filed by both the farmers and the bankruptcy attorneys. The farmers seek to exclude testimony by the bankruptcy attorneys' expert, not on *Daubert*[1] or Rule 702 grounds, but on relevance and prejudice grounds pursuant to Rules 401 and 402 of the Federal Rules of Evidence. The bankruptcy attorneys seek to exclude evidence of malpractice insurance, including references that they admitted contacting their malpractice insurance carrier regarding the farmers' case, and evidence of prior disciplinary complaints or actions against them by the Iowa State Bar Association.

## I. INTRODUCTION

### A. Factual Background

I set out the factual background to this case in considerable detail in my September 12, 2011, Memorandum Opinion And Order Regarding Defendants' Motion For Summary Judgment (docket no. 41), 2-11, *Timmerman v. Eich*, 809 F. Supp. 2d 932, 935-39 (N.D. Iowa 2011). A briefer summary will suffice here to put in context the parties' evidentiary motions.

---

[1] *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) (establishing a two-step process to determine the admissibility of scientific or expert testimony, examining, first, the validity of reasoning and methodology underlying the expert's testimony and, second, considering relevance and likelihood that the evidence would assist the trier of fact).

Unless circumstances dictate otherwise, I will identify plaintiffs Dean and Ann Timmerman separately as Dean and Ann and plaintiff Larry Eide, the Chapter 7 bankruptcy case trustee, separately as "the Trustee," but all three plaintiffs collectively as "the Timmermans." I will identify defendants Ronald F. Eich, R. Patrick Eich, and the Eich Law Firm, P.C., collectively as "the Eichs."

Dean and Ann have been involved in farming since the early 1970s. By early 2006, however, they had run into considerable financial trouble—so much so, that the bank that had financed their farming operation for many years, American National Bank (ANB), told Dean that he and Ann were going to have to declare bankruptcy, but that if they did, then ANB would advance them money for the next crop year. The parties agree that ANB wanted Dean and Ann to file a Chapter 7 bankruptcy. In February 2006, Dean and Ann hired the Eich Law Firm to represent them in their bankruptcy proceedings. They provided all of their financial records for 2005 and 2006 to the Eichs, the Eichs prepared the appropriate bankruptcy documents based on the information that they had provided, and Dean and Ann signed them, relying on the Eichs to have prepared them correctly and completely.

On March 15, 2006, notwithstanding that ANB wanted Dean and Ann to file a Chapter 7 (liquidation) petition, the Eichs actually filed a voluntary Chapter 12 (family farm reorganization) petition for them in the United States Bankruptcy Court for the Northern District of Iowa. The Eichs maintain that Ann would not consent to the filing of a Chapter 7 petition. The Timmermans assert that, despite the requirement that Chapter 12 debtors go through credit counseling prior to the filing of the petition, the Eichs did not mention that counseling to Dean or Ann until after the petition was filed. The Timmermans also contend, and the Eichs admit, that during the same month that the Chapter 12 petition was filed, the Eichs advised Dean and Ann to transfer more than

3

$100,000 into the Eichs' trust account, but those transfers and the assets they represented were not disclosed on the bankruptcy schedules prepared by the Eichs. On February 2, 2007, the Eichs converted Dean and Ann's bankruptcy petition from a Chapter 12 petition to a Chapter 7 petition, because the Eichs had been unable to get a reorganization plan confirmed. The Timmermans contend that the Eichs did so without their permission and without discussing any other options.

At a meeting of creditors in the Chapter 12 proceeding on April 11, 2006, and again in a meeting of creditors in the Chapter 7 proceeding on March 19, 2007, Dean and Ann confirmed the accuracy of the schedules and statement of affairs in the bankruptcy filings. There is now no dispute that the schedules and statement of affairs did not accurately disclose all of the assets and transfers of assets, for example, because they did not disclose some of the transactions or funds that had been funneled through the Eichs' trust account. Dean and Ann contend that they believed that the Eichs had accurately completed the schedules based on the information that they had provided.

The parties agree that, on or about May 17, 2007, the United States Trustee filed an Adversary Complaint objecting to discharge in the bankruptcy proceeding pursuant to 11 U.S.C. § 727, alleging that the Timmermans engaged in various kinds of misconduct, including failing to disclose assets and knowingly confirming the accuracy of the false bankruptcy schedules. On June 16, 2007, the Eich Law Firm filed Dean and Ann's answer to the United States Trustee's Adversary Complaint.

A few months later, on or about October 18, 2007, two new attorneys filed their appearances in the bankruptcy proceeding on behalf of Dean and Ann, and, on or about October 24, 2007, the Eichs filed a motion to withdraw. On October 31, 2007, shortly after new counsel appeared, one of the new attorneys filed on Dean and Ann's behalf a motion to dismiss the bankruptcy proceeding, arguing that, at the outset of the case, Dean

and Ann failed to meet the eligibility requirements of Title 11, because they had not obtained credit counseling as required by 11 U.S.C. § 109(h)(1). On December 10, 2007, the bankruptcy court denied Dean and Ann's motion to dismiss, after having received objections from several creditors and the United States Trustee, *inter alia*, noting that, with permission of the bankruptcy court, Dean and Ann had completed credit counseling after the filing of their Chapter 12 petition. *See* Plaintiffs' Summary Judgment Appendix at SJM 0045-SJM 0053. On December 18, 2007, Dean and Ann's other new attorney filed on their behalf a notice of appeal to the Bankruptcy Appellate Panel (BAP) of the denial of their motion to dismiss, but that appeal was later dismissed voluntarily pursuant to a Settlement Agreement.

More specifically, in February of 2008, Dean and Ann, case Trustee Eide, United States Trustee Habbo Fokkena, and Dean and Ann's four biggest unsecured creditors entered into a Settlement Agreement pursuant to which the Trustee was to secure court approval of a compromise that would allow the Timmermans to repurchase the equity in their homestead at 90% of its appraised value; Dean agreed to denial of his discharge under 11 U.S.C. § 727; the adversary proceeding against Ann was dismissed; the unsecured creditors party to the Settlement Agreement agreed not to take collection action until the resolution of the Timmermans' malpractice claim against the Eichs; and the Timmermans agreed to dismiss their appeal to the BAP. Pursuant to the Settlement Agreement, on May 13, 2008, the bankruptcy court entered an Order Re: Motion For Entry Of Judgment denying Dean's discharge and dismissing the Adversary Complaint against Ann. The parties agree that, if Dean had been granted a discharge in the bankruptcy proceeding, the unsecured creditors, including the four unsecured creditors who were parties to the Settlement Agreement, would have received very little (which the Timmermans clarify means $50,000 to $75,000) with respect to their unsecured claims.

Dean contends that the stress that he had previously been under because of pressure from his creditors was exacerbated by the Eichs' mishandling of his bankruptcy proceeding.

## B. *Procedural Background*

On November 13, 2009, the Timmermans filed the Complaint And Jury Demand (docket no. 1) against the Eichs commencing this action and asserting jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. The Timmermans asserted claims of professional negligence in Count I; breach of express and/or implied warranty in Count II; and punitive damages in "Count III." On January 15, 2010, the Eichs filed an Answer (docket no. 12), denying the Timmermans' claims. Pursuant to an Order Setting Trial, Final Pretrial Conference, And Requirements For Final Pretrial Order (docket no. 16), trial in this matter was set during the two-week period beginning October 17, 2011.

On June 8, 2011, the Eichs filed a Motion For Summary Judgment (docket no. 25), asserting that the Trustee was not a real party in interest and lacked standing, that the court lacked subject matter jurisdiction over the Timmermans' state-law claims, and that the Eichs were otherwise entitled to summary judgment on the Timmermans' claims on the merits, primarily because their injuries were caused by their own fraudulent acts. The Timmermans filed a Resistance (docket no. 34) on July 18, 2011, resisting almost all of the Eichs' grounds for summary judgment, but agreeing that their breach-of-warranty claim should be dismissed, and the Eichs filed a Reply (docket no. 36) on July 28, 2011. In my September 12, 2011, ruling on the Eichs' Motion For Summary Judgment, I denied the motion as to lack of standing of the Trustee; as to lack of subject matter jurisdiction; as to issue preclusion and judicial estoppel; as to the Eichs' *in pari delicto* defense; and as to Dean and Ann's prayer for punitive damages. However, I granted the Eichs' Motion

For Summary Judgment as to Dean and Ann's prayers for emotional distress damages and as to the Timmermans' breach-of-warranty claim. *See Timmerman*, 809 F. Supp. 2d at 956.

Just prior to my ruling on the Eichs' Summary Judgment Motion, the parties filed motions in limine in anticipation of the October 17, 2011, trial date. Shortly after briefing was completed on those motions, however, the trial had to be rescheduled to begin on April 2, 2012, owing to a conflict in my calendar. *See* Order Resetting Trial (docket no. 46). On October 11, 2011, the Eichs filed a Notice of Interlocutory Appeal (docket no. 48) from my ruling on their Summary Judgment Motion. On November 21, 2011, the Eighth Circuit Court of Appeals granted the Timmermans' motion to dismiss the appeal. *See* Judgment (docket no. 51). The Mandate from the Eighth Circuit Court of Appeals pursuant to that Judgment was entered on December 14, 2011. *See* Mandate (docket no. 61). Thus, this matter is now set for trial to begin April 2, 2012, and it is appropriate for me to address the pending motions in limine.

Those motions are the following: The Timmermans' September 6, 2011, Motion In Limine (docket no. 38); and the Eichs' September 8, 2011, Motion In Limine (docket no. 39). On September 20, 2011, the Eichs filed a Brief In Opposition To Plaintiffs' Motion In Limine (docket no. 43), and on September 23, 2011, the Timmermans filed a Reply Brief To Defendants' Brief In Opposition To Plaintiffs' Motion In Limine (docket no. 45). On September 16, 2011, the Timmermans filed a Resistance To Defendants' Motion In Limine (docket no. 42), on September 22, 2011, the Eichs filed a Reply Brief In Support Of Motion In Limine (docket no. 44), and on September 29, 2011, the Timmermans filed a Notice Re: Supplemental Case Authority On Defendants' Motion In Limine (docket no. 47).

The Eichs have now advised the Timmermans, and represented to the court that "they intend to admit that they were negligent, and that their negligence caused Plaintiffs to have to buy back their homestead exemption and certain leases and incur additional attorney fees, [but] Defendants deny that their negligence was a proximate cause of the Bankruptcy Court denying Dean a discharge." Reply Brief In Support Of Motion In Limine (docket no. 44).

I do not find that oral arguments are necessary on the Motions In Limine, so I will consider them fully submitted on the written submissions.

## II. LEGAL ANALYSIS

### A. Rule 104 And Preliminary Question Of Admissibility

As a preliminary matter, I note that Rule 104 of the Federal Rules of Evidence provides, generally, that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court. . . ." FED. R. EVID. 104. Such preliminary questions may depend upon such things as whether the factual conditions or legal standards for the admission of certain evidence have been met. *See id.*, Advisory Committee Notes, 1972 Proposed Rule. This rule, like the other rules of evidence, must be "construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that truth may be ascertained and proceedings justly determined." FED. R. EVID. 102. I conclude that preliminary determination of the admissibility of the evidence put at issue in the parties' Motions In Limine will likely serve the ends of a fair and expeditious presentation of issues to the jury. Therefore, I turn to consideration of the standards applicable to the admissibility of the evidence challenged here.

## B. Applicable Rules Of Evidence

Both the Timmermans and the Eichs base their Motions In Limine on the irrelevance of the evidence identified or its potential for prejudice or confusion outweighing any probative value that it may have. Therefore, before turning to consideration of the challenged evidence, I will survey the Federal Rules of Evidence concerning relevance and prejudice.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence that "(a) . . . has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Rule 402 provides that relevant evidence is generally admissible, but irrelevant evidence is not.[2]

Rule 403 provides for exclusion of even relevant evidence on various grounds, as follows:

> The court may exclude relevant evidence if its probabtive value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.[3]  As the Eighth Circuit Court of Appeals recently explained,

---

[2]Rule 401 and Rule 402 were both amended in the course of amendments to the Federal Rules of Evidence in 2011, effective December 1, 2011. Like other amendments to the Federal Rules of Evidence in 2011, these amendments were "part of the general restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules," were "intended to be stylistic only," and were not intended "to change any result in any ruling on evidence admissibility." FED. R. EVID. 401, Advisory Committee Notes, 2011 Amendments; FED. R. EVID. 402, Advisory Committee Notes, 2011 Amendments.

[3]Stylistic amendments to this rule also became effective on December 1, 2011.

> [U]nder Rule 403, the [challenged evidence's] probative value
> must be *substantially* outweighed by *unfair* prejudice.
> "Evidence is not unfairly prejudicial because it tends to prove
> guilt, but because it tends to encourage the jury to find guilt
> from improper reasoning. Whether there was unfair prejudice
> depends on whether there was an undue tendency to suggest
> decision on an improper basis." *United States v. Farrington*,
> 499 F.3d 854, 859 (8th Cir. 2007) (quotations omitted).

*United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (emphasis in the original); *United States v. Myers*, 503 F.3d 676, 681 (8th Cir. 2007) ("Rule 403 'does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case. The rule protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis.'" (quoting *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981), *aff'd sub nom. Smith v. Wade*, 461 U.S. 30, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)).

The Advisory Committee Notes to Rule 403 explain that a decision on an "improper basis" is "commonly, though not necessarily, an emotional one." FED. R. EVID. 403, Advisory Committee Notes; *see also United States v. Jiminez*, 487 F.3d 1140, 1145 (8th Cir. 2007) (quoting this note); *United States v. Dierling*, 131 F.3d 722, 730-31 (8th Cir. 1997) (considering whether evidence was unfairly prejudicial, because it might lead to a decision on an improper basis, where it purportedly had no connection to the charged offense and revealed grisly or violent behavior that made the defendant appear "dangerous"). Unfairly prejudicial evidence has also been described as evidence that is "'so inflammatory on [its] face as to divert the jury's attention from the material issues in the trial.'" *United States v. Adams*, 401 F.3d 886, 900 (8th Cir. 2005) (quoting *United States v. Shoffner*, 71 F.3d 1429, 1433 (8th Cir. 1995)). "Under Rule 403, district courts have broad discretion to assess unfair prejudice, and are reversed only for an abuse of

discretion." *Myers*, 503 F.3d at 681 (citing *United States v. Henderson*, 416 F.3d 686, 693 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175, 126 S. Ct. 1343, 164 L. Ed. 2d 57 (2006)); *accord Muhlenbruch*, 634 F.3d at 1001 ("We review the district court's decision not to exclude evidence under Rule 403 for an abuse of discretion.").

The Eichs assert that some of the evidence in question should be excluded pursuant to Rule 404(b), and the Timmermans disagree. As the Eighth Circuit Court of Appeals has recently explained,

> Federal Rule of Evidence 404(b) prohibits the admission of "[e]vidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). It does not, however, prohibit the admission of such evidence if it is "admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Whether Rule 404(b) prohibits the admission of a particular piece of evidence depends, therefore, on the purpose for which it is offered. *See Huddleston v. United States*, 485 U.S. 681, 687, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988) ("Generally, [Rule 404] do[es] not flatly prohibit the introduction of such evidence, but instead limit[s] the purpose for which it may be introduced.").

*United States v. Maxwell*, 643 F.3d 1096, 1101 (8th Cir. 2011).[4] As the Eighth Circuit Court of Appeals has also explained, "'Admissibility of 404(b) evidence is governed by four factors: the evidence must be 1) relevant to a material issue; 2) proven by a preponderance of the evidence; 3) of greater probative value than prejudicial effect; and 4) similar in kind and close in time to a charged offense.'" *United States v. McGilberry*,

---

[4] Although the court in *Maxwell* cited the version of Rule 404(b) prior to amendments in 2011, the amendments to Rule 404, like other amendments to the Federal Rules of Evidence effective December 1, 2011, were intended to be stylistic only.

620 F.3d 880, 886 (8th Cir. 2010) (quoting *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005)); *Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000) (applying the same factors to determine the admissibility of prior acts of the harasser in a discrimination suit, but excluding evidence of the harasser's prior affairs with customers as only minimally relevant to whether he had a motive to accost a co-worker, owing to lack of similarity, substantial temporal separation, and inflammatory nature). "'There is no absolute rule for the number of years that can separate evidence of offenses admitted under Rule 404(b). Instead [courts] examine the facts and circumstances of each case and apply a reasonableness standard.'" *Id.* (quoting *United States v. Thomas*, 398 F.3d 1058, 1063 (8th Cir. 2005)).

Even where evidence might otherwise be admissible pursuant to Rule 404(b), however, it may still be subject to exclusion, if its probative value is substantially outweighed by its potential for prejudice or confusion. *See Maxwell*, 643 F.3d at 1102 (explaining that such a balancing analysis may be "folded into" or separate from determination of whether evidence is admissible pursuant to Rule 404(b)); *see also Clark*, 295 F.3d at 814 (holding that Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *United States v. Mound*, 149 F.3d 799, 801-02 (8th Cir. 1998) (same), *cert. denied*, 525 U.S. 1089 (1999). In the Rule 404(b) context, "[a]lthough an issue for which an item of evidence is offered as proof need not be in dispute for the item to be admissible, the probative value of an item of evidence is calculated with respect to the other evidence available to prove the same point." *Clark v. Martinez*, 295 F.3d 809, 813 (8th Cir. 2002) (citations omitted).

Where evidence may otherwise be inadmissible pursuant to Rule 403 or 404(b), the Eighth Circuit Court of Appeals and the Federal Rules of Evidence recognize that a limiting instruction on the proper uses of certain evidence may mitigate potential prejudice

from such evidence. *See, e.g, United States v. Cowling*, 648 F.3d 690, 699 (8th Cir. 2011) ("Moreover, the risk of unfair prejudice was reduced by a cautionary instruction to the jury, given when the evidence was first admitted."); *United States v. Young*, 644 F.3d 757, 761 (8th Cir. 2011) (concluding that the district court did not abuse its discretion in admitting evidence for the limited purpose set forth in its instruction); *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) ("[A] limiting instruction [concerning proper use of evidence of a prior conviction] diminishes the danger of unfair prejudice arising from the admission of the evidence."); *see also* FED. R. EVID. 105 (requiring a limiting instruction when the court admits evidence for a limited purpose).

With these rules in mind, I turn to consideration of the admissibility of the evidence that the parties challenge.

### C. The Timmermans' Motion In Limine

The Timmermans assert that the Eichs should be prevented from calling their expert, Robert F. Craig, to testify at trial, because his report fails to disclose any testimony that would be relevant to any of the elements of a legal malpractice claim. The Eichs disagree.

#### 1. Arguments of the parties

The Timmermans argue that, in legal malpractice cases, expert testimony is ordinarily required to establish negligence, as such testimony is relevant to the issue of the standard of care and whether the defendant attorney violated that standard of care. However, they argue that Mr. Craig's report reveals that he would offer no testimony relevant to the issue of whether or not the Eichs satisfied the standard of care. Indeed, they contend, Mr. Craig nowhere asserts in his report that the Eichs did or did not satisfy the standard of care. At most, the Timmermans argue, his report reveals vague assertions

questioning whether or not the Timmermans' replacement counsel in the bankruptcy proceeding should have advised the Timmermans to consent to the denial of Dean's discharge. Because that testimony is not relevant to any of the four elements of legal malpractice, the Timmermans argue that it is irrelevant and inadmissible, pursuant to Rules 401 and 402 of the Federal Rules of Evidence. They also make a passing assertion that any relevance that Mr. Craig's testimony might have would be outweighed by the danger of unfair prejudice under Rule 403, but they offer no argument for why that is so.

In essence, the Eichs argue that Mr. Craig's testimony is relevant to whether or not the result of the bankruptcy proceeding would have been different had the Eichs not allegedly committed malpractice and whether or not the Timmermans' damages proximately resulted from their own actions or the negligence of the Eichs. Thus, they argue that Mr. Craig's testimony is relevant and admissible. More specifically, the Eichs argue that Mr. Craig's testimony is relevant to whether or not Dean had valid defenses to denial of discharge and whether or not the Timmermans properly appealed the order denying their motion to dismiss the Chapter 7 petition because they had failed to complete credit counseling as required by 11 U.S.C. § 109(h)(1), then improperly waived this valid defense by dismissing their appeal to the BAP. The Eichs argue that lay persons cannot be expected to understand the vagaries of bankruptcy procedure and substantive legal rules derived from statutes and case law. Thus, they argue that Mr. Craig's expert testimony will assist the jurors to determine whether the result of the underlying bankruptcy proceedings would have been different, had the Eichs not been negligent.

In reply, the Timmermans assert that the Eichs are wrong when they assert that the Timmermans must prove that their replacement bankruptcy counsel, selected by the Eichs' malpractice insurance carrier to get them out of the mess created by the Eichs, had perfect foresight in predicting what the bankruptcy and appellate courts would have eventually

decided that might have achieved a better result. They cite numerous cases suggesting that a negligent attorney cannot take refuge in the subsequent negligence or malpractice of a replacement attorney, because the possibility of malpractice by the replacement attorney is normal to the situation that the original attorney's negligence created. The Timmermans argue that it was also reasonable for the Eichs to foresee that dismissal based on noncompliance with § 109(h)(1) raised an unsettled question, and that dismissal of the appeal to the BAP and denial of Dean's discharge, in exchange for Ann's discharge, the opportunity to repurchase their homestead for 90% of its equity, and a hiatus in collection activity against Dean by their four biggest creditors, were reasonable steps to salvage something from the mess made by the Eichs. They reiterate that Mr. Craig's opinion is, at best, ambiguous on the issue of sole proximate cause and, at worst, that the Timmermans could not have beaten the United States Trustee's Adversary Complaint, so that they were lucky to salvage a settlement that discharged Ann and forestalled collection against Dean. They clarify that, to the extent that Mr. Craig can offer a relevant opinion, his testimony should nevertheless be excluded pursuant to Rule 403, because it would be unfairly prejudicial, confuse the issues, be misleading, and cause an undue delay and waste of time.

### 2. *Analysis*

To prevail on a legal malpractice claim, the plaintiff must prove that (1) there is an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, violated or breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual injury, loss, or damage. *Kubik v. Burk,* 540 N.W.2d 60, 64 (Iowa Ct. App. 1995) (describing these as the elements of a *prima facie* case (citing *Schmitz v. Crotty,* 528 N.W.2d 112, 115 (Iowa 1995))). More

specifically, the Iowa Supreme Court has explained the "causation" requirement in a legal malpractice case as follows:

> Causation is an essential element in a cause of action based on negligence. *See Crookham v. Riley,* 584 N.W.2d 258, 265 (Iowa 1998) (noting causation must be proved in a legal malpractice action "the same as any other negligence action"). It is composed of two components. The first is a "but-for" or "cause in fact" component. *Yates v. Iowa W. Racing Ass'n,* 721 N.W.2d 762, 774 (Iowa 2006). The second is a "legal cause" or "proximate cause" component. *Id.* A defendant's conduct is not a cause in fact "'[i]f the plaintiff would have suffered the same harm had the defendant not acted negligently.'" *Berte v. Bode,* 692 N.W.2d 368, 372 (Iowa 2005) (citation omitted). The defendant's conduct is not a legal cause "'if the harm that resulted from the defendant's negligence is so clearly outside the risks he assumed that it would be unjust or at least impractical to impose liability.'" *Id.* (citation omitted). The question of causation is normally for the jury to decide, but there are circumstances when the issue can be decided as a matter of law. *See Ruden v. Jenk,* 543 N.W.2d 605, 611-12 (Iowa 1996) (holding, as a matter of law, defendant failed to show proximate cause).
>
> Causation in a negligence action must be analyzed in the context of the relationship between those theories of negligence supported by the evidence and the theory of damages sought by the plaintiff. Actual causation, as well as legal causation, must exist between the breach of the duty of care and the damages sought.

*Faber v. Herman*, 731 N.W.2d 1, 7 (Iowa 2007). Thus, "[w]hen the alleged malpractice involves the handling of a lawsuit, the plaintiff must establish the third element [causation] by proving that, but for the lawyer's negligence, the underlying suit would have been successful." *Huber v. Watson*, 568 N.W.2d 787, 790 (Iowa 1997) (citing *Blackhawk*

*Bldg. Sys., Ltd. v. Law Firm of Aspelmeier, Fisch, Power, Warner & Engberg*, 428 N.W.2d 288, 290 (Iowa 1988)).

The Iowa Supreme Court has explained, "Expert testimony that an attorney's conduct is negligent is necessary unless proof is so clear a trial court can rule as a matter of law that the professional failed to meet an applicable standard or the conduct is so clear it can be recognized or inferred by a person who is not an attorney." *Kubik*, 540 N.W.2d at 64. Such expert testimony ordinarily goes specifically to the standard of care applicable to the defendant lawyer and whether or not the defendant lawyer breached it. *See, e.g., Crookham v. Riley*, 584 N.W.2d 258, 266 (Iowa 1998) ("In a legal malpractice action, expert testimony upon the standard of care is usually required." (citing *Kubik*, 540 N.W.2d at 64)). Furthermore,

> Although a witness generally should not be permitted to give their opinions on questions of domestic law, *Miller v. Bonar,* 337 N.W.2d 523, 529 (Iowa 1983), this rule does not apply where the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case. *United Cent. Bank v. Kruse,* 439 N.W.2d 849, 852 (Iowa 1989). In the context of a legal malpractice action, whether a lawyer's assessment of a legal proposition is correct may be an issue of fact. *Id.; see also Hariri v. Morse Rubber Prods. Co.,* 465 N.W.2d 546, 549 (Iowa App.1990).

*Crookham*, 584 F.3d at 267-68.

As an initial matter, I agree with the Timmermans that Mr. Craig's opinions, as reflected in his Report, Exhibit A to Plaintiffs' Motion In Limine, do not address the standard of care applicable to the Eichs or whether or not the Eichs breached that standard of care. Although those are the usual topics on which expert testimony is required in a legal malpractice case, *see, e.g., Crookham*, 584 N.W.2d at 266; *Kubik*, 540 N.W.2d at 64, that fact does not make expert testimony on other elements of a bankruptcy malpractice

claim irrelevant. Here, the Eichs assert that Mr. Craig's testimony is relevant to the "causation" and "damages" elements of the Timmermans' bankruptcy malpractice claim, *see Kubik*, 540 N.W.2d at 64, because it tends to show that poor representation by the Timmermans' replacement counsel, rather than the Eichs' negligence, precluded Dean from obtaining a discharge.[5] There are, nevertheless, problems with the Eichs' argument that Mr. Craig's testimony on these elements of the Timmermans' bankruptcy malpractice claim is relevant.

The Timmermans argue that such a defense of supervening malpractice by replacement counsel should be precluded, because a negligent attorney should not be allowed to take refuge in the subsequent errors of replacement counsel hired to mitigate the injured client's damages, citing, *inter alia*, RESTATEMENT (SECOND) OF TORTS § 457. I recently considered such a bar to evidence of subsequent malpractice as a supervening cause in a *medical* malpractice case under Iowa law and RESTATEMENT (SECOND) OF TORTS § 457. *See Lee v. Small*, ___ F. Supp. 2d ___, 2011 WL 5866246, *13-*16 (N.D. Iowa Nov. 22, 2011). In the *medical* malpractice context, I concluded that, "read casually, some Iowa cases seem to suggest that any argument that a [replacement] physician's malpractice in treating a plaintiff's injuries was a superseding intervening cause is simply barred, if the plaintiff was not negligent in selecting the [replacement] doctor." *Lee*, ___ F.3d at ___, 2011 WL 5866246 at *13. However, I noted that there was also support for the position that there may be fact questions for a jury to resolve as to whether the negligence of subsequent medical providers was a superseding intervening cause of

---

[5]I note that a defense based on subsequent poor performance of the Timmermans' replacement bankruptcy counsel is a departure from the Eichs' primary defense, at the summary judgment stage of the proceedings, which was that the Timmermans' own fraudulent acts, not negligence of the Eichs, caused their injuries.

some or all of a plaintiff's injuries allegedly caused by the malpractice of the initial provider. *Id.* at \*14. In *Lee*, I concluded that the record was not sufficiently developed to determine whether, as a matter of law, a staphylococcus infection is a known risk of hospitalization or a known risk of accepted and common medical treatments that the plaintiff received, or, indeed, whether the medical treatments that the plaintiff received were accepted and common, or extraordinary and unforeseeable. *Id.* at \*15.

The Timmermans do not contend, and I have not found, that the Iowa Supreme Court has extended § 457 to the legal malpractice context. However, as the Timmermans assert, several decades ago, the Court of Appeals of Kentucky did just that in *Wimsatt v. Haydon Oil Co.*, 414 S.W.2d 908 (Ky. 1967).[6] The *Wimsatt* court explained its rationale for doing so, as follows:

> In *City of Covington v. Keal*, 280 Ky. 237, 133 S.W.2d 49, 126 A.L.R. 905, this court recognized and followed the general rule, which is thus stated in an accurate headnote:
>
> > 'If an injured person exercises reasonable care to minimize his damages by selecting a physician or surgeon to treat his injuries, he may recover damages to the full extent of his injuries, even though the physician employed omits to use the most approved remedy, or the best means of cure or fails to exercise as high a degree of skill and care as another physician might have exercised.' *Id.*, 133 S.W.2d 49, Headnote 8.

---

[6]Before 1976, the Court of Appeals of Kentucky was that state's highest court. *See Morgan v. Commonwealth of Kentucky*, 198 S.W.3d 99, 133 n.20 (Ky. 2006) ("Prior to 1976, our highest court was the "Court of Appeals." Upon adoption of the Judicial Article that Court became the Supreme Court. 1974 Ky. Acts, ch. 84, § 2(1), (8)."), *overruled on other grounds*, *Shane v. Commonwealth of Kentucky*, 243 S.W.3d 336 (Ky. 2007).

The *Keal* case has been cited with approval in *Croley v. Huddleston*, 304 Ky. 811, 202 S.W.2d 637, 640, and in *Brown Hotel Company v. Marx, Ky.*, 411 S.W.2d 911, (decided February 24, 1967). See also 48 A.L.R.2d 348, et seq., and 100 A.L.R.2d 810, et seq. In accord are Prosser, Torts, Sec. 51, pp. 318—319 (3d ed. 1964) and *Restatement, Torts*, Sec. 457.

It is at once apparent that the rule we have been discussing relates to personal injuries, and efforts to minimize them by subsequent medical treatment. *The rule in that area seems to be well settled; if the injured person exercises ordinary care in selecting a doctor to treat his injuries, and follows the advice of the doctor, he is permitted recovery for the full extent of his injuries, despite a showing that a better method of treatment was available. We are not able to discern any reasonable basis for a different rule as respects legal advice obtained in an effort to mitigate harm caused by negligent legal practice.*

*The same reasons are applicable to the situation at bar as in personal injury cases.* One basis for the rule is that the injured person is not skilled in medical science; he has done all that can be expected of him when he exercises ordinary care in selecting a competent physician. By parity of reasoning, it is noted that Carrico was not skilled in law; he was thrust into a precarious legal entanglement by the allegedly negligent action of his first attorneys, and in order to extricate himself from that situation he required legal advice. There is no suggestion that he was negligent in the selection of his second attorney. Indeed, we think it could not be argued that the second attorney was negligent or remiss in seeking to undo the legal harm caused to Carrico by the alleged negligence of his first lawyers. The second attorney promptly tendered the amended complaint, asserting Carrico's personal injury claim. The trial court ruled that it came too late; this court is now holding, by a divided vote, that that ruling of the trial court was erroneous. Was it negligence of the second lawyer to fail to appeal? We think it would require far too great a burden to

> impose upon a lawyer the prescience which would enable him to foretell that such an appeal would be fruitful. But the real test is whether Mr. Carrico was negligent in not appealing, or insisting on it. To admit that the lawyer was not negligent in failing to appeal is to say certainly that layman-Carrico was free of negligence. *How then can the first lawyers, admittedly negligent as the pleadings now stand, take refuge in the assertion that Carrico should have done more to mitigate his damages? It is our view that Carrico did all that the law and reason required of him; the unsuccessful efforts of his second lawyer fall within the risk created by the pleaded negligence of the first lawyers.* Reference is had to annotations in 45 A.L.R.2d 5, and 62 et seq. for the general rules incident to liability of attorneys for negligence.

*Wimsatt*, 414 S.W.2d at 911-912 (emphasis added). Thus, *Wimsatt* suggests that a replacement counsel's purported errors cannot be raised as a defense to causation by the first, negligent attorney, if replacement counsel was reasonably selected by the injured client and the replacement counsel's errors were within the risk created by the pleaded negligence of the first lawyer. *Cf. Lee*, ___ F. Supp. 2d at ___, 2011 WL 5866246 at *13 (considering whether, in the medical malpractice context, the injured person reasonably selected a replacement medical provider and whether the subsequent health condition was a known risk of reasonable and ordinary treatment by the subsequent medical provider, or unknown or the result of extraordinary and unreasonable care and, therefore, unforeseeable).

As noted above, under Iowa law, in the *legal* malpractice context, "[t]he defendant's conduct is not a legal cause if the harm that resulted from the defendant's negligence is so clearly outside the risks he assumed that it would be unjust or at least impractical to impose liability." *Faber*, 731 N.W.2d at 7 (internal quotation marks and citations omitted). Thus, the implication is that, if the harm is so clearly *within* the risks

that the defendant assumed, *i.e.*, was so clearly foreseeable, that it would be just and practical to impose liability, then the defendant's conduct *was* a legal cause of the harm. This is analogous to the rule stated in *Wimsatt*. Therefore, I conclude that, under Iowa law, the question of whether a negligent attorney can be held liable for harm that resulted from replacement counsel's conduct turns on whether the injured party reasonably selected replacement counsel, whether the actions of replacement counsel were foreseeable, and whether the correctness (or unreasonableness) of replacement counsel's assessment of the legal propositions underlying the choices replacement counsel made can be determined as a matter of law or must be determined as a matter of fact. *Crookham*, 584 F.3d at 267-68 (legal malpractice); *Wimsatt*, 414 S.W.2d at 911-912 (legal malpractice); *Lee*, ___ F. Supp. 2d at ___, 2011 WL 5866246 at *13 (medical malpractice).

Here, I conclude, first, that the Timmermans reasonably selected replacement counsel by accepting replacement counsel provided by the Eichs' malpractice insurance carrier. I also conclude that, as a matter of law, any error of the Timmermans' replacement counsel in dismissing their appeal of the denial of the Timmermans' motion to dismiss for failure to complete credit counseling pursuant to § 109(h)(1) and agreeing to denial of Dean's discharge, in exchange for Ann's discharge, the chance to repurchase their homestead, and a hiatus on collection activity, were foreseeable risks of the situation in which the Eichs' now-admitted negligence had placed the Timmermans. There is no fact question that each of the problems on which the Eichs contend that replacement counsel performed inadequately were problems created by the Eichs, where the Eichs now represent that they admit negligence. But for the Eichs' failure to require the Timmermans to obtain credit counseling before filing their bankruptcy petition, the question of whether or not they were "ineligible" would never have arisen. Similarly, but for the Eichs' negligence in preparing Ann and Dean's bankruptcy schedules and statement of affairs,

there would have been no basis for the United States Trustee's Adversary Complaint for denial of discharge pursuant to § 727.

I also conclude that, as a matter of law, replacement counsel's conduct was not so unreasonable as to be unforeseeable. First, as Mr. Craig acknowledges in his Report at 2, there was and still is a split in the courts regarding application of § 109(h)(1), and it was far from a foregone conclusion that the Timmermans' "ineligibility" ground for dismissal of their bankruptcy petition would prevail. Second, replacement counsel's negotiation of a settlement of the discharge issues, which allowed Dean and Ann to repurchase their homestead, allowed Ann to be discharged, and forestalled collection actions against Dean, even though he was denied a discharge, were not such unreasonable actions to address and avoid the consequences of adverse findings on the Trustee's Adversary Complaint against both Ann and Dean that replacement counsel's solution was unforeseeable or extraordinary.

Moreover, much of Mr. Craig's opinion that replacement counsel should not have agreed to denial of Dean's discharge is premised on the argument that, by agreeing to denial of discharge, Dean admitted fraudulent conduct and that, in denying discharge, the bankruptcy court found that Dean had engaged in fraudulent conduct. However, I rejected that argument *as a matter of law* more than once in my ruling on summary judgment. *See Timmerman*, 809 F. Supp. 2d at 948-49 (rejecting that argument as a basis for issue preclusion); *id.* 950 (rejecting the argument as a basis for estoppel); *id.* at 951-53 (rejecting the argument as the basis for an *in pari delicto* defense). Under no circumstances will Mr. Craig will be allowed to opine that the law is contrary to my summary judgment ruling on the legal effect of Dean's entry into the Settlement Agreement or the bankruptcy court's denial of his discharge pursuant to that Settlement Agreement. *Cf. Crookham*, 584 F.3d at 267-68 (noting that "a witness generally should

not be permitted to give their opinions on questions of domestic law, [unless] the legal issue is raised in such a manner that it becomes an operative fact to be proven within the case" (citations omitted)).

Finally, to the extent that Mr. Craig might otherwise be allowed to offer any opinions that the failings of replacement counsel, not the Eichs' negligence, caused injury to the Timmermans, his opinions are too equivocal and tenuous to establish a basis for the jury to find that replacement counsel's failings were either the cause in fact or the legal cause of any harm to the Timmermans. Mr. Craig's Report states, in pertinent part,

> Having one's discharge denied is the most severe civil sanction that can be imposed on a debtor. Given that the majority of the cases support the § 109(h)(1) interpretation urged on behalf of the Timmermans [on appeal] and that the case law on this issue continues to develop, *I question why one would stipulate to this most severe sanction and dismiss the appeal.*

Report at 3 (emphasis added). I doubt that this statement has any tendency to make a fact (whether replacement counsel performed reasonably or whether replacement counsel's conduct, rather than the Eichs' negligence, caused the Timmermans' injury) more or less probable than it would be without the statement. *See* FED. R. EVID. 401 (defining relevant evidence). Certainly, it falls well short of any opinion, to a reasonable degree of professional certainty, "that, but for the [replacement] lawyer's negligence, the underlying suit would have been successful." *Cf. Huber*, 568 N.W.2d at 790 (explaining the causation standard for conduct of the allegedly negligent attorney).

Moreover, even if Mr. Craig's opinion has some relevance, it is so slight that the probative value of that opinion is substantially outweighed by a danger of confusing the issues, misleading the jury, delaying the proceedings, or wasting time. *See* FED. R. EVID. 403 (allowing relevant evidence to be excluded on this ground). Certainly, significant time

could be lost and confusion generated by the necessity to probe how far case law supported either the bankruptcy court's grounds for denial of dismissal for "ineligibility" pursuant § 109(h)(1) or Mr. Craig's opinion that an "ineligibility" defense was meritorious, particularly where Mr. Craig's opinions, as set out in his Report, do not account for the grounds on which the bankruptcy court actually denied dismissal on "ineligibility" grounds.

The Timmermans' Motion In Limine to exclude the testimony of the Eichs' expert, Robert F. Craig, as a witness at trial, is granted.

## D. The Eichs' Motion In Limine

I turn, next, to the Eichs' Motion in Limine. As noted above, the Eichs' Motion In Limine seeks to exclude two categories of evidence: (1) evidence of malpractice insurance, including evidence that the Eichs admitted contacting their malpractice insurance carrier regarding the Timmermans' case, and (2) evidence of prior disciplinary complaints or actions against the Eichs, or more specifically, Ronald Eich, by the Iowa State Bar Association. I will consider the admissibility of these two categories of evidence in turn.

### 1. Evidence of malpractice insurance

#### a. Arguments of the parties

The Eichs seek to exclude evidence regarding insurance, or insurance coverage, which may be or was in effect to indemnify the Eichs for damages that may be awarded as a result of a judgment in this matter, including, but not limited to, any reference that the Eichs admitted that they had contacted their malpractice insurance carrier regarding the Timmermans' case. The Eichs argue that such evidence should be excluded pursuant to both Rule 411 and Rule 402 of the Federal Rules of Evidence, because it is irrelevant to

any issue in the case. Furthermore, they argue that, if the existence of malpractice insurance is somehow relevant, its probative value is substantially outweighed by the danger of unfair prejudice, because it might lead the jurors to determine the amount of damages based on improper grounds.

The Timmermans contend that Rule 411 excludes evidence of insurance on the issue of negligence, but does not require exclusion of such evidence when offered for another purpose. They contend that they would offer evidence that Ronald Eich told an Assistant United States Trustee that he was going to contact his malpractice insurance carrier, not to prove that he had insurance, but to prove that he is liable, specifically, that he believed that he had committed malpractice. In short, the Timmermans argue that Ronald Eich's statement that he had contacted his malpractice insurance carrier is an admission inconsistent with any contention that he was not negligent. They also contend that evidence that the Eichs had malpractice insurance is relevant to whether their replacement counsel was negligent, because their replacement counsel was selected by the malpractice insurance carrier, which is evidence that replacement counsel was competent and impeaches the Eichs' claim that the Timmermans were at fault for following replacement counsel's advice. They also argue that any prejudice from references to malpractice insurance could be cured with a limiting instruction.

In reply, the Eichs argue that their admission that they acted negligently makes any evidence regarding insurance irrelevant. They also argue that such evidence is unfairly prejudicial, because Rule 411 is designed precisely to prevent the existence of insurance from being deemed to be an admission of liability. They also explain that they do not intend to claim that replacement counsel was negligent or that the Timmermans were at fault, but that they will claim that the sole proximate cause of Dean's denial of discharge was his consent to an order denying him a discharge. They also argue that they would be

unfairly prejudiced by such evidence, because it would invite the jurors to decide the case on an improper ground.

### b.    Analysis

Rule 411 currently provides as follows:

> Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully.  But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control.

FED. R. EVID. 411 (2011).[7]  As I have explained,

> The purpose of the rule is "to avoid the possibility of prejudice to the insured party."  *Ouachita Nat'l Bank v. Tosco Corp.,* 686 F.2d 1291, 1301 (8th Cir. 1982).  "In this regard, it is generally thought that the jury's knowledge that a plaintiff is receiving insurance benefits, or that a defendant is carrying liability insurance, might serve to decrease or increase, respectively, the amount of damages awarded by a jury." *Id.; accord Higgins v. Hicks Co.,* 756 F.2d 681, 685 (8th Cir. 1985) (the concern of Rule 411 is that "'knowledge of the presence or absence of liability insurance would induce juries to decide cases on improper grounds'") (quoting Advisory Committee Notes to Rule 411).  "However, it is established that the existence of liability insurance may be used for some purposes, such as showing the possible bias of a witness." *Id.; Morrissey v. Welsh Co.,* 821 F.2d 1294, 1305 (8th Cir. 1987) ("[N]ot every reference to insurance constitutes reversible error.").  Thus, where evidence of a defendant's

---

[7]This version of Rule 411 became effective December 1, 2011.  However, like other amendments to the Federal Rules of Evidence that became effective at that time, the amendments to Rule 411 were "intended to be stylistic only" with "no intent to change any result in any ruling on evidence admissibility." FED. R. EVID. 411, Advisory Committee Notes, 2011 Amendments.

> liability insurance is irrelevant to any issues in the case, the evidence may properly be excluded. *Higgins,* 756 F.2d at 685. On the other hand, evidence of liability insurance may properly be admitted if it is relevant to an issue in the case or if it is offered to prove bias or prejudice of a witness. *Id.* at 684-85.

*Williams v. Security Nat'l Bank of Sioux City, Iowa*, 358 F. Supp. 2d 782, 788 (N.D. Iowa 2005).

I concluded in *Williams* that evidence of insurance was being offered for the "tangential" and permissible purpose of showing that the defendant bank had minimized its conduct in representations to its insurers, so that the concerns of Rule 411 were only marginally implicated by a letter making reference to the bank's insurance coverage. *Id.* at 788. I also concluded that inferential notice that the bank had insurance was unlikely to induce jurors to find against the bank. *Id.* at 788-89. Finally, I found that any danger of unfair prejudice from such tangential reference to insurance could be mitigated by a limiting instruction. *Id.* at 789.

The present circumstances in which the Timmermans seek to offer evidence of the Eichs' malpractice insurance and their reference to contacting the malpractice insurance carrier are distinguishable in nearly every way from those in which the plaintiff in *Williams* sought to introduce evidence of the defendant's insurance coverage. In *Williams*, I found that it was the *statements minimizing the defendant's conduct* in a letter its insurer that justified incidental reference to insurance. *Id.* at 788. Here, it is the *existence of insurance* for the Eichs or evidence that the Eichs were *contacting their insurer*, not some statement by the Eichs *to* their insurer *about their conduct*, that the Timmermans assert is an admission. Thus, the reference to insurance is not incidental to other evidence, but purportedly is the central evidence. Such direct reference to malpractice insurance might

well induce jurors to make a determination on an improper basis. *See id.* (the purpose of the rule is to avoid possible prejudice to the insured party, where it is thought that jurors' knowledge that the defendant is carrying liability insurance might serve to increase the amount of damages awarded). Here, I am also not at all convinced that a statement that an attorney was contacting his or her malpractice insurance carrier is necessarily an admission of negligence, any more than the fact that someone *had* malpractice insurance is an admission of negligence. Certainly, the concerns of Rule 411 that evidence of insurance not be used to prove negligence are implicated in much the same way by evidence that a defendant contacted his or her insurance carrier before any claim of negligence was made. Specifically, it would seem that the purpose of offering this evidence is precisely the prohibited purpose of "prov[ing] whether the person acted negligently." FED. R. EVID. 411. The probative value of evidence that the Eichs were contacting their malpractice insurance carrier, to the extent it might be admissible as an admission of negligence, is also seriously undercut by the Eichs' representation that they will now admit negligence, making the evidence essentially cumulative. *See* FED. R. EVID. 403 (probative evidence may be excluded, *inter alia*, if it is cumulative).

Thus, to the extent that the Eichs' Motion In Limine seeks to exclude references to their statements that they were contacting their malpractice insurance carrier, or to exclude evidence simply showing the existence of malpractice insurance, the Motion is granted.

Evidence that the Timmermans' replacement counsel was supplied by the Eichs' malpractice carrier, on the other hand, is the sort of tangential reference to insurance that may be permissible under Rule 411, because it would explain the circumstances in which the Timmermans obtained replacement counsel and may impeach the Eichs' new argument that replacement counsel's performance, not the Eichs' negligence, is a superseding intervening cause of the Timmermans' injuries. *See* FED. R. EVID. 411 (evidence of

insurance may be admissible for a purpose other than proving negligence); *cf. Williams*, 358 F. Supp. 2d at 788-89 (tangential references to insurance may not be excluded by Rule 411). The Eichs' assertion that they are not arguing that replacement counsel was negligent does not bear scrutiny. Thus, it may be appropriate to rebut the Eichs' argument that the performance of the Eichs' replacement counsel, not the Eichs' negligence, was the cause of injury to the Timmermans with evidence that the Eichs' malpractice carrier supplied the Timmermans' replacement counsel.

To the extent that the Eichs' Motion In Limine seeks to exclude evidence that their malpractice insurance carrier provided the Timmermans with replacement counsel, the Motion is denied.

### 2. *Evidence of disciplinary actions*

The last category of evidence that the Eichs seek to exclude is evidence regarding prior disciplinary complaints or actions against the Eichs, and more specifically, Ronald Eich, by the Iowa State Bar Association or any other governing body. The Timmermans also resist exclusion of this category of evidence.

The disciplinary actions in question are three public reprimands, dated July 22, 1986, April 7, 1988, and August 21, 1991, respectively, and one suspension of law license for sixty days on October 9, 2002. More specifically, on July 22, 1986, the Iowa Supreme Court ordered that the reprimand of Ronald Eich by the Committee on Professional Ethics and Conduct for his "failing to make timely filings in a probate matter, [his] failure to remove a delinquency after receiving notice thereof, and [his] failure to respond to notice of complaint" be made public. *See* Plaintiffs' Resistance To Defendants' Motion In Limine (docket no. 42), Exhibit A (docket no. 42-2), 1-2. On April 7, 1988, the Iowa Supreme Court ordered that the reprimand of Ronald Eich by the Committee on Professional Ethics and Conduct for his "neglecting to make a timely application to modify

a dissolution decree, in dismissing that application without consulting with [his] client, and [his] failure to advise the client of that action" be made public. *See id.*, Exhibit B (docket no. 42-3), 1-2. On October 11, 1991, the Iowa Supreme Court ordered that the reprimand of Ronald Eich by the Committee on Professional Ethics and Conduct for "withholding [his] fees from a disbursement to the executor of a decedent's estate, prior to the entry of a Court order authorizing your fee and in excess of the statutory fee for which the Court order was ultimately entered" be made public. *See id.*, Exhibit C (docket no. 42-4), 1-2. Finally, on October 9, 2002, on review of a report of the Grievance Commission, the Supreme Court suspended Ronald Eich's license to practice law for sixty days for "(1) failing to establish a conservatorship for Martha Pearson and failing to file a timely inheritance tax return in her estate, (2) failing to initiate estate proceedings for Hilding Pearson, (3) failing to file a timely inheritance tax return in Bert [Pearson]'s estate, . . . (4) failing to respond to the revenue department's repeated inquiries about it," and (5) failure to disclose information required to be disclosed in drafting a receipt and waiver in Hilding's conservatorship, which purported to receipt for all assets in the conservatorship by the estate, when no estate had even been opened for Hilding. *See id.*, Exhibit D (docket no. 42-5), 1 & 5-6.

### a. Arguments of the parties

The Eichs argue that none of these disciplinary actions relate to the handling of bankruptcy matters by the Eichs and none involved the Timmermans. Thus, they argue that the disciplinary actions are irrelevant. Moreover, they argue that the disciplinary actions should be excluded pursuant to Rule 404(b), because they are evidence of other wrongs offered to show action in conformity therewith. Finally, they argue that any probative value that these disciplinary actions might have is outweighed by the danger of unfair prejudice, although they do not articulate specifically what that prejudice might be.

In response, the Timmermans argue that this evidence is admissible as evidence of opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident, and, therefore, admissible pursuant to Rule 404(b), and as evidence of habit or routine, admissible pursuant to Rule 406. Somewhat more specifically, the Timmermans argue that the disciplinary actions are relevant to show the Eichs' motive to deny their negligence (which the Eichs now represent they will not do), to avoid progressive discipline from the Iowa Supreme Court. They also argue that the disciplinary actions are relevant to show reckless disregard of the Timmermans' rights, because the conduct at issue in the disciplinary actions parallels the conduct on which the Timmermans' negligence claims are based, and occurred on several prior occasions over many years. The also argue that the prior incidents of similar wrongful conduct are relevant to willful and wanton conduct and reckless disregard of rights, for purposes of punitive damages. The disciplinary actions are also relevant, the Timmermans assert, to impeach any opinion that the Eichs may have about whether or not their conduct breached the applicable standard of care. Finally, the Timmermans argue that the pattern of disciplinary actions is not remote in time from the misconduct in their case, but shows regular misconduct over 25 years, showing that Mr. Eich does not learn from his mistakes and his law firm does not take adequate action to prevent damage to clients.

In reply, the Eichs again assert that their willingness to admit their negligence obviates most of the grounds on which the Timmermans argue that this evidence is relevant. They also argue that, because the Timmermans allege that they acted negligently, not intentionally, opportunity, intent, preparation, plan, knowledge, and absence of mistake or accident simply are not at issue in this case. They also argue that four incidents between 5 and 25 years ago do not establish any "habit" or "systemic conduct." Finally, they dispute the relevance of the disciplinary actions to the issue of

punitive damages, because, while the jurors may consider prior similar misconduct, there is not sufficient similarity here, where the conduct at issue was in different kinds of cases, governed by different statutes, procedures, and rules, than the bankruptcy case underlying the Timmermans' malpractice claim.

### b.  Analysis

The parties have not identified, and I have not found, any Iowa decisions addressing the admissibility of prior disciplinary actions or complaints in a professional malpractice lawsuit.  However, as both parties acknowledge, other state courts have done so.

Most recently, in *Jacob v. Kippax*, 10 A.3d 1159 (Me. 2011), the Maine Supreme Court considered, in a medical malpractice case against an oral surgeon, the plaintiff's appeal of exclusion of evidence of a disciplinary action against the oral surgeon and a consent agreement from the Board of Dental Examiners.  The Maine Supreme Court concluded that the trial court had not abused its "wide" discretion in excluding the evidence.  *Jacob*, 10 A.3d at 1162-63.  The plaintiff asserted that the evidence was not offered simply to show conformity, but "(1) to impeach both [the defendant] and the defense expert by showing bias and lack of credibility; (2) for the admissions that it contained; (3) to show absence of mistake or motive; or (4) to rebut habit evidence." *Id.* at 1163.  More specifically, the court rejected the plaintiff's argument that the evidence was relevant for impeachment, on the ground that the prior discipline showed the defendant's motive to deny negligence in the case before the court, where his medical license and reputation would be at risk, because the defendant's interest in the case was "self-evident," and it was unclear how the evidence would show bias of the expert. *Id.* Even though the court agreed with the plaintiff that statements in the consent agreement were admissions, the court concluded that they were not relevant, "because they do not deal with or relate to the conduct in this case." *Id.* Nor was the evidence relevant to show

motive or absence of mistake or to show habit, at least before any habit evidence had been presented. *Id.* The Maine Supreme Court concluded that, "[g]iven this lack of probative value, the [trial] court did not abuse its discretion in concluding that the significant risk of unfair prejudice presented by the disciplinary action and consent agreement required exclusion of this evidence in [the plaintiff's] case-in-chief." *Id.* The court recognized that there might be circumstances in which the evidence would be admissible to rebut certain specific testimony, but that those circumstances were not presented at trial, so that there was no error. *Id.* at 1163-64.

As the parties also acknowledge, in *Curran v. Buser*, 711 N.W.2d 562 (Neb. 2006), the Nebraska Supreme Court rejected the argument of the plaintiffs in a medical malpractice case that the trial court should have admitted the defendant surgeon's disciplinary history to impeach his credibility. *Curran*, 711 N.W.2d at 572. The Nebraska Supreme Court held that it was not enough to prove negligence to show "merely that the defendant acted negligently in the past." *Id.* at 573. The court also concluded that the surgeon could only be impeached with matters that are relevant to some issue involved in the case. *Id.*

In contrast to these cases generally excluding evidence of prior disciplinary proceedings, the parties note that, in *Kostel v. Schwartz*, 756 N.W.2d 363 (S.D. 2008), the South Dakota Supreme Court allowed evidence of prior disciplinary proceedings and other "prior acts" evidence in a malpractice case against a neurosurgeon relating to spinal surgery. Referring to cases cited by the defendant neurosurgeon, the court explained, "These cases are consistent with the precept that inquiry into an expert's *alleged* mistakes or connection to *unrelated* adverse claims do not impact on his credibility or character for truthfulness. However, these cases also hold that evidence contrary to the representation of the witness's expertise in the field for which he offers his opinion at bar *is relevant to*

*his competency* and does impact credibility, and therefore, is appropriate inquiry." *Kostel*, 756 N.W.2d at 370-71 (emphasis added) (citing cases). The court also "recognized that where a witness makes an issue of his credibility by favorable direct testimony, he 'opens the door' to impeachment evidence on cross-examination." *Id.* at 373 (internal quotation marks and citations omitted). In the case before it, the court concluded that inquiry into prior malpractice to which the defendant doctor had admitted was permissible. *Id.* at 374. Furthermore, the court concluded, "[T]he procedures giving rise to the malpractice actions about which Kostel would have inquired of Dr. Schwartz were not of a kind remote in time or unrelated in type to Kostel's procedure. Consequently, this inquiry would have related to Dr. Schwartz's competency and thereby would have been relevant to the assessment of his credibility in the eyes of the jury." *Id.*

In *Kostel*, the South Dakota Supreme Court also concluded that the trial court had not abused its discretion by admitting evidence of prior instances of the neurosurgeon misreading x-rays and "conducting surgery at unconsented to levels" under the state's version of Rule 404(b), because it was relevant to show that the neurosurgeon lacked the knowledge to perform the procedure in question. *Id.* at 376. The court again noted that the incidents from which the "other acts" evidence was derived "were similar in kind and close in time to Kostel's surgery" and that it "was entered for the purpose of showing his knowledge and skill [and] was not unduly prejudicial," because it showed that the plaintiff's surgery was performed in error due to the neurosurgeon's lack of competency. *Id.* However, the Eighth Circuit Court of Appeals recently criticized *Kostel* as "misinterpret[ing] Rule 404(b)'s reference to 'knowledge' by allowing parties to introduce evidence showing only propensity to commit malpractice." *See Bair v. Callahan*, 664 F.3d 1225, 1229 (8th Cir. 2012).

Lacking any controlling precedent from the Iowa Supreme Court on the admissibility of prior disciplinary actions in a professional malpractice case, I observe that the concerns identified in the cases cited above correlate to the concerns addressed by Rules 404(b) (prior acts) and 406 (habit) of the Federal Rules of Evidence. *Compare McGilberry*, 620 F.3d at 886 ("'Admissibility of 404(b) evidence is governed by four factors: the evidence must be 1) relevant to a material issue; 2) proven by a preponderance of the evidence; 3) of greater probative value than prejudicial effect; and 4) similar in kind and close in time to a charged offense.'" (quoting *Walker*, 428 F.3d at 1169)); *with Jacob*, 10 A.3d 1162-63 (considering the admissibility of prior disciplinary action in light of its relevance to show motive to deny negligence, as well as bias and absence of mistake, considering the relationship of the disciplinary actions to the case, and balancing the probative value against the risk of unfair prejudice); *Curran*, 711 N.W.2d at 572-73 (also considering whether the evidence was offered to show conformity to past negligence and relationship to issues in the case); *Kostel*, 756 N.W.2d at 370-74 & 376 (also considering the relationship to the claims in the case and whether the disciplinary actions and other acts were remote in time and whether they were offered for a permissible Rule 404(b) purpose); *and also compare Williams*, 358 F. Supp. 2d at 812-14 (explaining that "habit" evidence, within the meaning of Rule 406, is evidence showing one's regular response to a repeated specific situation, and cautioning that it is only when examples offered to establish a pattern of conduct or habit are numerous enough to base an inference of systematic conduct that examples are admissible, but noting that "habit" evidence is admissible to show what a person actually did, but may be more speculative, if offered to show what he would have done); *with Jacob*, 10 A.3d at 1163 (rejecting the admissibility of prior disciplinary actions to show "habit" at least prior to presentation of any "habit" evidence).

36

I will consider the admissibility of the disciplinary actions evidence first, and only briefly, as "habit" evidence within the scope of Rule 406. Effective December 1, 2011, Rule 406 provides as follows:

> Evidence of a person's habit or an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice. The court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness.

FED. R. EVID. 406 (2011).[8] The persuasiveness of such evidence as proof of conduct on a particular occasion depends on "the 'degree of regularity of the practice and its coincidence with the occasion.'" *Williams*, 358 F. Supp. 2d at 812 (quoting *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1524 (11th Cir. 1985), in turn quoting *McCormick on Evidence* § 195 n.16). I do not believe that four disciplinary actions from five to twenty years before the conduct at issue here, involving disparate kinds of misconduct, even if they all involved some kind of negligent conduct, even remotely demonstrate that the instances of misconduct "are numerous enough to base an inference of systematic conduct upon them." *Id.* at 813 (internal quotation marks and citations omitted). Thus, the disciplinary actions evidence is not admissible pursuant to Rule 406.

Nor is it admissible pursuant to Rule 404(b) as "other acts" evidence. Indeed, such evidence satisfies only one of the factors in the Rule 404(b) admissibility analysis, proof by a preponderance of the evidence, *see McGilberry*, 620 F.3d at 886 (second factor); *Williams*, 223 F.3d at 755, and then only in part. The *fact of* the disciplinary actions can

---

[8]Like the 2011 amendments to the other Federal Rules of Evidence considered in this ruling, the 2011 amendments to Rule 406 were "intended to be stylistic only" with "no intent to change any result in any ruling on evidence admissibility." FED. R. EVID. 406, Advisory Committee Notes, 2011 Amendments.

be proved by a preponderance of the evidence, but the *facts giving rise to* the disciplinary actions are, with the exception of the last one, described only generically in the Exhibits provided by the Timmermans. Moreover, while it is difficult to tell precisely what circumstances gave rise to the various kinds of misconduct identified in the disciplinary actions, it is clear that the disciplinary actions involved different kinds of negligent conduct from the negligent conduct at issue here, and not only because none involve negligence in a bankruptcy matter. *Id.* (fourth factor); *Williams*, 223 F.3d at 755 (same). I do not think that the kind of "neglect" identified in the last disciplinary action—the only one providing more than a generic statement of the circumstances, *see* Exhibit D—is similar in kind to any significant degree to the kind of "negligence" at issue in this case. While some of the incidents may be within the broad time period that the Eighth Circuit Court of Appeals has been willing to accept, I find that, in light of the facts and circumstances here, even a five-year separation pushes the limits of reasonableness. *Id.* (noting that "'[t]here is no absolute rule for the number of years that can separate evidence of offenses admitted under Rule 404(b), [so that courts] examine the facts and circumstances of each case and apply a reasonableness standard.'" (quoting *Thomas*, 398 F.3d at 1063)).

The differences in kind and time also seriously undermine any relevance of the prior disciplinary actions, even assuming that they might otherwise be admissible for a permissible Rule 404(b) purpose. *See id.* (first factor); *Williams*, 223 F.3d at 755. While the Eichs' admission of negligence obviates some of the Rule 404(b) purposes for which the Timmermans asserted that the evidence was admissible, even those remaining are doubtful. Specifically, the evidence cannot be offered to show motive to deny negligence, where the Eichs admit negligence, and even if the Eichs had not done so, their interest in denying negligence would have been "self-evident." *See Jacob*, 10 A.3d at 1163. Similarly, where the Eichs admit negligence, it is unlikely that there will be any need for

38

evidence to impeach their opinions about whether or not they satisfied the standard of care in this case, and the evidence of the disciplinary actions would, in any event, shed little light on that issue, where the disciplinary actions "do not deal with or relate to the conduct in this case." *Id.*; *Curran*, 711 N.W.2d at 573 (holding that the defendant surgeon could only be impeached with other malpractice or disciplinary actions that were relevant to some issue involved in the case). Even offered as evidence of "recidivism" or "reckless disregard of rights," to support the Timmermans' claim for punitive damages, the evidence of the disciplinary actions sheds little or no light on whether the Eichs engaged in a series of very similar kinds of misconduct that would brand them "recidivists" or demonstrate their "reckless disregard of" the same kinds of rights. *Compare Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 978-79 (N.D. Iowa 2006) (explaining that for evidence of prior acts to be admissible to show "recidivism," the conduct in question must "replicate the prior transgressions"). Ultimately, where the evidence of the prior disciplinary actions provides so little illumination on any issue in this case, it appears that it is really being offered to show the Eichs' propensity to treat clients' cases negligently, a purpose not permitted under Rule 404(b). *See* FED. R. EVID. 404(b) (evidence of prior acts is not admissible to prove that on a particular occasion the person acted in accordance with the character trait); *Bair*, 664 F.3d at 1229 (Rule 404(b)'s reference to proof of "knowledge" as a permissible purpose for prior acts evidence does not allow parties to introduce evidence showing only propensity to commit malpractice).

Finally, in light of what is, at best, only marginal probative value of the evidence of prior disciplinary actions against Ronald Eich, I conclude that such marginal probative value is substantially outweighed by its potential prejudicial effect. *McGilberry*, 620 F.3d at 886. Although the Eichs have poorly articulated the "prejudice" involved, it seems self-evident that evidence of essentially unrelated prior misconduct could cause a jury to find

negligence (if it is somehow still at issue), causation, or damages on the improper basis that some other tribunal had already branded the Eichs as negligent with or neglectful of client matters warranting discipline. *Cf. Myers*, 503 F.3d at 681 ("Rule 403 . . . protects against evidence that is unfairly prejudicial, that is, if it tends to suggest decision on an improper basis."); *see also Maxwell*, 643 F.3d at 1102 (explaining that such a balancing analysis may be "folded into" or separate from determination of whether evidence is admissible pursuant to Rule 404(b)); *Clark*, 295 F.3d at 814 (holding that Rule 403 applies to evidence otherwise admissible pursuant to Rule 404(b)); *cf. Curran*, 711 N.W.2d at 573 (holding that it was not enough to prove negligence to show "merely that the defendant acted negligently in the past.").

The part of the Eichs' Motion In Limine seeking to exclude evidence of prior disciplinary actions is granted.[9]

## III.  CONCLUSION

Upon the foregoing,

1.     The Timmermans' September 6, 2011, Motion In Limine (docket no. 38), seeking to exclude the testimony of the Eichs' expert, Robert F. Craig, as a witness at trial, is **granted**;

2.      The Eichs' September 8, 2011, Motion In Limine (docket no. 39) is **granted in part** and **denied in part**, as follows:

a.     to the extent that the Eichs' Motion In Limine seeks to exclude references to their statements that they were contacting their malpractice insurance

---

[9]This ruling does not preclude the use of evidence of the disciplinary actions for impeachment purposes, if the Eichs somehow open the door to such evidence.

carrier, or to exclude evidence simply showing the existence of malpractice insurance, the Motion is **granted**;

      b.    to the extent that the Eichs' Motion In Limine seeks to exclude evidence that their malpractice insurance carrier provided the Timmermans with replacement counsel, the Motion is **denied**;

      c.    to the extent that the Eichs' Motion In Limine seeks to exclude evidence of prior disciplinary actions, the Motion is **granted**.

3.    To avoid exposure of potential jurors to information about challenged evidence, this ruling shall be sealed until ten days after completion of the trial or notice of any settlement, unless a party files a motion within that ten-day period showing good cause why the ruling should remain sealed.

      **IT IS SO ORDERED.**

      **DATED** this 29th day of February, 2012.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA